## A98A1263. JOINER v. LANE.
### (508 SE2d 203)

JOHNSON, Presiding Judge.

Gary Joiner appeals from a judgment in the amount of one million dollars entered upon the jury's verdict in favor of John Lane. For the reasons set forth below, we affirm.

This case involves an intentional tort arising out of a shooting incident in which Lane suffered serious and permanent injuries. At trial, the issues of liability and damages were hotly contested. The jury was required to judge the credibility of witnesses who often gave testimony in such direct and complete conflict with the testimony of other witnesses that no reasonable juror could but conclude that some were outright lying. This Court does not re-weigh the evidence before the trial court or judge witness credibility, as these are not appellate court functions. *Horney v. Lawrence*, 189 Ga. App. 376, 378 (3) (375 SE2d 629) (1988). Rather, we consider only the sufficiency of the evidence, and if some evidence exists to support the jury's verdict, we will uphold it. *Parr v. Pinson*, 182 Ga. App. 707 (1) (356 SE2d 740) (1987).

On appeal, this Court must construe the evidence and every reasonable inference and presumption arising therefrom in support of the verdict and judgment. See *Dept. of Transp. v. Hillside Motors*, 192 Ga. App. 637, 639 (2) (385 SE2d 746) (1989); *Worn v. Sea-Cold Svcs.*, 135 Ga. App. 256 (3) (217 SE2d 425) (1975). When viewed in this light, the evidence showed that Joiner and one of his sons flagged Lane down as he drove his truck past Joiner's home. Lane stopped and got out of his truck, whereupon Joiner told his son to "shoot the son of a bitch." Joiner's son responded by retrieving a high powered rifle which was concealed behind a tree. He fired three shots at Lane. One of the bullets struck Lane in the upper leg, causing a severe fracture of the femur and the loss of a substantial amount of flesh. Lane suffered severe pain as a result of his injuries. His medical expenses were substantial, as was his loss of income. His injuries resulted in a 30 percent permanent impairment to his body. There was other circumstantial evidence at trial linking Joiner as a fully participating party to this shooting, though it is clear that it was Joiner's son who actually pulled the trigger. A detailed discussion of this evidence is not necessary to this opinion.

1. The trial court did not err in denying Joiner's motion for directed verdict. The evidence was in conflict as to numerous material issues. A verdict shall be directed when there is no conflict in the evidence as to any material issue and the evidence introduced, with all reasonable deductions therefrom, shall demand a particular verdict. *Pendley v. Pendley*, 251 Ga. 30 (1) (302 SE2d 554) (1983); OCGA § 9-11-50 (a). Construing the evidence in a light most favorable to Lane, as we are required to do, we find there was evidence to support the jury's verdict. See *Ga. Power Co. v. Irvin*, 267 Ga. 760, 762 (1) (482 SE2d 362) (1997); *Flournoy v. Brown*, 226 Ga. App. 857, 861 (4) (487 SE2d 683) (1997).

2. Joiner argues the trial court erred in several ways in its instructions to the jury. We find his contentions to be without merit. As a general rule a requested charge should be given where it has been raised by the evidence, embraces a correct and complete principle of law, has not been substantially included in the general instructions given, and is specifically adjusted to the evidence. See *SCM Corp. v. Thermo Structural Prods.*, 153 Ga. App. 372, 379 (7) (A) (265 SE2d 598) (1980). However, a trial court does not err in refusing to give a charge which is confusing, misleading, inapt, not precisely tailored or adjusted to the evidence or not authorized by the evidence. See generally *Hill v. State*, 259 Ga. 557, 558 (3) (b) (385 SE2d 404) (1989); *Continental Research Corp. v. Reeves*, 204 Ga. App. 120, 126-127 (3) (419 SE2d 48) (1992).

(a) The trial court did not err in refusing to charge Joiner's request to charge nos. 23, 24, and 25. These charges pertained to imputed liability resulting from either an agency or parental relationship. The requests to charge were not tailored to the evidence presented at trial and also were inapt as they failed to inform the jury that these were issues unrelated to the question of civil conspiracy. Thus, a fair risk exists that the charges could have misled the jury as to their application. See *Continental Research*, supra.

(b) The trial court charged the jury that its oath required them to make a true verdict based on the law given them and the evidence, a verdict that speaks the truth without favor or affection to either side, and that the jury has the duty to do only what the law says it should do without favor or affection to either side. Because these charges substantially informed the jury of the legal principles in Joiner's request to charge no. 6, the trial court did not err in declining to give the charge in the exact language requested. See *Bedeski v. Atlanta Coliseum*, 224 Ga. App. 435, 436 (2) (480 SE2d 881) (1997).

(c) The trial court did not err by declining to give Joiner's request to charge no. 13, a pattern jury charge on proximate cause, which Joiner described at trial as a "basic proximate cause charge." On its face, the request implied that there could only be one proximate

cause of an accident, that is, the dominant cause. But "there may be more than one proximate cause of an injury" and this appears to be a particularly relevant concept in cases in which legal issues of conspiracy, joint tortfeasors or joint venture have been raised. See *Dept. of Transp. v. Blair*, 220 Ga. App. 342 (1) (469 SE2d 446) (1996). In this case, a primary issue for jury resolution was whether Joiner wrongfully acted in concert with or otherwise engaged in conduct to command or counsel his son to shoot Lane. The trial court did not err in failing to give the charge as requested because it was not tailored to the evidence and accordingly, a fair risk existed that the jury would have been confused and misled as to the issue before it. See *Roberts v. Chapman*, 228 Ga. App. 365, 367 (2) (492 SE2d 244) (1997); *Lindley v. State*, 225 Ga. App. 338, 342 (2) (a) (484 SE2d 33); *Mattox v. MARTA*, 200 Ga. App. 697, 699 (4) (409 SE2d 267) (1991).

Joiner has not specifically argued that the trial court's failure to give an appropriate proximate cause charge, upon denial of his own request concerning proximate cause, was error. Compare *Lynd v. State*, 262 Ga. 58, 60 (8) (414 SE2d 5) (1992) and *DeKalb County v. Lenowitz*, 218 Ga. App. 884, 887 (1) (463 SE2d 539) (1995) with *Weems v. State*, 268 Ga. 142, 145 (11) (485 SE2d 767) (1997). The trial court merely charged the jury that in order to be held liable, Joiner must "have participated in some fashion that got the shooting done." This action was not defended by Joiner on the basis that the act of his son in shooting Lane with a high-powered rifle was not the direct and proximate cause of Lane's injuries and damage. In fact, it is undisputed, clear and palpable that it was. Rather, Joiner defended claiming that his son justifiably shot Lane and/or without any command, order, suggestion or participation by him. However, there was evidence to show Joiner acted in direct concert with his son in bringing about the shooting. Under these particular facts, the inexplicable failure of the trial court to give an appropriate charge on proximate cause, upon denial of Joiner's charge request, while clearly error, is harmless and not serious enough to warrant a reversal.

(d) The trial court did not err in charging the jury on the principle of parties to a crime. While the parties argued the case to the jury on theories of agency and civil conspiracy between Joiner and his son to shoot and injure Lane, and the trial court instructed the jury on the law regarding those theories, what the jury had before it was in fact a garden variety intentional tort case where the evidence supported the jury's conclusion that Joiner and his son had acted in concert to bring about the shooting upon which this claim for damages was based. The acts described in the charge on parties are acts which, if found by the jury to exist, would constitute circumstantial evidence that Joiner and his son acted in concert to commit an intentional tortious act injuring Lane. If the jury found Joiner to be a

party to the shooting because he counseled or commanded his son to shoot Lane, Joiner would be a classic joint tortfeasor. He would be a tortfeasor who acted in concert with another to inflict a single indivisible injury. See generally *Posey v. Medical Center-West*, 257 Ga. 55, 56-58 (354 SE2d 417) (1987); see OCGA § 51-12-30. Upon examining the contested charge on parties in the context of the entire charge, we find that no fair risk exists that the jury was misled. See also *Deese v. Carroll &c. Hosp.*, 203 Ga. App. 148, 149-150 (1) (416 SE2d 127) (1992). Assuming without deciding that a small portion of the contested charge was not adequately adjusted to the evidence or tailored to a civil suit alleging an intentional tort of battery, an inappropriate charge, unless harmful, is not grounds for reversal. See *Gene Thompson Lumber v. Davis Parmer Lumber Co.*, 189 Ga. App. 573, 577 (5) (377 SE2d 15) (1988).

The only exception taken to the charge on parties to a crime was that it suggested to the jury: (i) if one were a party to the crime or actually committed the crime this would give rise to a tortious cause of action and (ii) a tortious cause of action could not arise because Joiner had already been acquitted of the crime. The charge was not erroneous for either reason. The jury was charged that Joiner was not charged in this case with aggravated assault and that he had been acquitted of that offense in an earlier trial. The charges given did not expressly or tacitly suggest that if Joiner were a party to or a perpetrator of the crime this would automatically give rise to a tortious cause of action. Because different standards of proof exist as to criminal cases and civil actions and because civil actions require a lower burden of proof, Joiner's acquittal of aggravated assault would not bar his liability for tortious conduct. See *Webb v. McDaniel*, 218 Ga. 366, 368 (127 SE2d 900) (1962). As the only grounds to which Joiner excepted to the charge are without merit, there remains no other viable claim of error as to this charge. See *James v. Tyler*, 215 Ga. App. 479, 482 (5) (451 SE2d 506) (1994); *Delaney v. Lakeside Villa*, 210 Ga. App. 430 (2) (440 SE2d 668) (1993).

(e) The trial court did not err in failing to give Joiner's request to charge no. 26 as to presence at the scene. The requested charge was imperfect and created a fair risk of being misleading because it did not correctly state that *mere* presence at the scene of the shooting is not sufficient to create liability. See *Roberts*, supra; *Lindley*, supra. A requested charge must be given only where it embraces a correct and complete legal principle, is adequately adjusted to the facts and is not otherwise included in the general instructions given. *Morris v. State Farm &c. Ins. Co.*, 203 Ga. App. 839, 840 (3) (418 SE2d 119) (1992). Viewing the charges in their totality, the jury was adequately instructed regarding the legal principle of mere presence at the scene of the shooting.

3. Joiner enumerates that the trial court erred in making inconsistent rulings concerning the admission of evidence of prior difficulties between the parties. We disagree.

(a) The parties to this suit are Gary Joiner and John Lane. Any contention by Joiner in support of this enumeration regarding the admission of any evidence of difficulties between parties other than Gary Joiner and John Lane is not reasonably contained within the scope of this enumeration and is not preserved for appellate review. See *Lenowitz*, supra. The evidence admitted as to incidents involving the confrontation of Gary and Jimmy Joiner with Mark Lane and Erozier Clark and the confrontation between Gary Joiner and Jeff Lane therefore are not before this Court for review.

Further, regarding the trial court's failure to let Jimmy Joiner testify as to his recollection of the confrontation he and Gary Joiner had with Mark Lane and Erozier Clark, appellant Gary Joiner has not shown how his recollection of this event would materially differ from the version testified to by Mark Lane and Erozier Clark. Harm as well as error must be shown to warrant a reversal. See *Whelchel v. Thomas Ford Tractor*, 190 Ga. App. 156 (1) (378 SE2d 510) (1989).

(b) Joiner has failed to show how he was harmed by the trial court's rulings which first struck evidence solicited by him that a feud existed between the Joiner and Lane families and then subsequently admitted testimony that prior to the incident, John Lane did not like the Joiners. See *Whelchel*, supra. These rulings are not inconsistent as the two questions are not identical in scope. No timely objection was posed to the admission of evidence regarding John Lane's feelings for the Joiners. Thus, this issue is not preserved for appellate review. See *Gully v. Glover*, 190 Ga. App. 238, 242 (4) (378 SE2d 411) (1989). All evidence is admitted as a matter of course unless a valid objection is timely interposed. *Wilson v. Southern R. Co.*, 208 Ga. App. 598, 604-605 (4) (431 SE2d 383) (1993).

4. Joiner, citing *Stouffer Corp. v. Henkel*, 170 Ga. App. 383 (317 SE2d 222) (1984), contends the trial court erred by allowing a physician to testify as to John Lane's injuries, medical treatment and prognosis even though the physician did not personally examine Lane. We disagree.

The physician, a board certified neurosurgeon and professor at the Medical College of Georgia, testified by deposition. He was a trauma unit team member and one of the doctors attending John Lane. As part of the regular course of treatment of a patient, the physician reviews the patient's history and determines what treatment is required. He personally attended two of John Lane's surgeries which occurred within days of Lane's injuries. The first surgical procedure primarily involved a cleaning of Lane's wound. Although the physician did not see Lane on a daily basis, he did see him at least

one time in a follow-up clinic. Based on his examination of Lane's recorded medical records and history, as well as the medical history the physician obtained by personally examining Lane, and examination of x-rays which had been admitted into evidence pursuant to stipulation, the physician described the location and general nature of injuries suffered by Lane from a gunshot from a 30-06 rifle. These injuries included a large, open wound near Lane's hip joint and another on the inner side of his thigh and the back part of his buttocks. Based on an examination of medical records and Lane's x-ray, the physician was of the impression that Lane's injuries were the result of one continuous gunshot wound. He also testified regarding the extent and general condition of an open fracture of the femur of Lane's leg, relying both on medical records and x-rays. The physician then testified to certain surgical treatment which he performed on Lane. He described these procedures, in part, referring to x-rays which had been admitted without objection. The physician, based on his examination of Lane's medical records, his own personal examination of Lane, and his education and experience, testified without objection that it would be a physical impossibility for Lane to have feeling in his injured leg below the knee.

In *Stouffer*, supra, the appellant did not object to the admission of the doctor's testimony but merely sought to have the other doctors' reports admitted in evidence. Thus, *Stouffer* is factually distinguishable and its holding as to the issue before us is mere dictum. Further, *Stouffer* addresses circumstances where the opinion testimony is based "merely upon records and case history" furnished by other doctors and not admitted in evidence. An expert can give an opinion based upon facts which he personally observes and, where an expert personally observes data collected by another, his opinion is not objectionable merely because it is based, in part, on the other person's findings. *Randall Mem. Mortuary v. O'Quinn*, 202 Ga. App. 541, 542 (1) (414 SE2d 744) (1992). Further, knowledge gained from hearsay by an expert, during the practice of his or her profession, may be used to express an opinion. *Doctors Hosp. v. Bonner*, 195 Ga. App. 152, 160 (4) (392 SE2d 897) (1990). Even if some of the physician's expert testimony "was based upon records which were hearsay because they had not been introduced in evidence, this would go to the weight of the evidence and not its admissibility." *Bentley v. B.M.W., Inc.*, 209 Ga. App. 526, 528 (2) (433 SE2d 719) (1993).

The physician's testimony was also based on his own observations, education and experience, despite his partial reliance on the records of other professionals which had not been admitted in evidence. We conclude the trial court did not err as enumerated. *O'Quinn*, supra.

5. The jury returned a verdict in favor of John Lane in the

amount of $1,000,000. We decline to find that the jury awarded Lane excessive damages.

In addition to the physician's testimony and testimony from Lane's daughters from which the jury could infer the nature and extent of John Lane's injuries and could determine the degree of pain and suffering which he sustained, the jury also heard testimony from an orthopedic surgeon, Dr. Alan Goodrich. Dr. Goodrich testified that Lane suffers a 30 percent impairment to his body as a whole, will be restricted in many physical activities for the remainder of his life, and will not be able to engage in his previous employment of farming and driving a tanker truck. Lane's average weekly salary was $317 and his medical expenses resulting from the shooting incident were $37,162.39. In addition, a copy of the American Experience Table of Mortality was introduced in evidence. At time of the incident, Lane was 47 years of age. The Table of Mortality shows that an average 47-year-old would have a life expectancy of 23.08 years. Although evidence exists that Lane was injured in a tractor-trailer accident two months earlier and still suffered back pain, dizzy spells and severe headaches from that accident and that there were discrepancies between his deposition and trial testimony as to the effect he felt from the gunshot wound, it was for a fair and impartial jury to decide the amount of damage to be awarded Lane for pain and suffering, based solely on its enlightened conscience. See *Richardson v. Downer*, 232 Ga. App. 721, 723 (1) (502 SE2d 744) (1998); *Howard v. Gardner*, 128 Ga. App. 545 (1) (197 SE2d 386) (1973).

A heavy appellate burden lies on a defendant to establish that a damage award either is inadequate or excessive within the meaning of OCGA § 51-12-12. In particular, appellate courts should be hesitant to second-guess verdicts where the damage award is based in any significant part on pain and suffering. This duty becomes most onerous when the jury is not required to render a special verdict as to damages. A special verdict form was not used in this case and Joiner has enumerated no error as to the form of the verdict.

The question of damages ordinarily is one for the jury. OCGA § 51-12-12 (a). However, effective July 1, 1987, a court can interfere with a jury verdict if the damages awarded "are clearly so inadequate or so excessive as to be inconsistent with the preponderance of the evidence in the case." OCGA § 51-12-12 (a). Unless rights vested by previous law will be impaired, this Court applies the law as it exists at the time of our judgment, rather than the law existing at the time judgment was rendered by the lower court. *Cheeley v. Henderson*, 261 Ga. 498 (1) (405 SE2d 865) (1991). Thus, we will review this enumeration applying the standard currently promulgated in OCGA § 51-12-12 (a).

A trial court's approval of the verdict creates a presumption of

correctness that will not be disturbed absent compelling evidence. Id. The record reveals no evidence sufficient to overcome this presumption, and Joiner has failed to affirmatively show by the record that the damage award in this case, announced by general verdict, was so flagrant as to clearly be inconsistent with the preponderance of the evidence.

*Judgment affirmed. Smith, J., and Senior Appellate Judge Harold R. Banke concur.*

DECIDED OCTOBER 23, 1998 —
RECONSIDERATION DENIED NOVEMBER 5, 1998 ▮▮▮▮▮▮▮▮▮▮

*Ross, Wallace & Hammond, Harold W. Wallace III, John C. Hammond*, for appellant.

Gary Joiner, *pro se.*
*Victor Hawk*, for appellee.