## A01A0994. HIBBARD v. P.G.A., INC.
### (553 SE2d 371)

MILLER, Judge.

The question on appeal is whether a certain equipment agreement is a lease-purchase or a lease with an option to purchase agreement. As the agreement is ambiguous, we employ the applicable rules of construction to conclude that it is a lease-purchase agreement. Since evidence showed the purchase was accomplished, we affirm the trial court's refusal to award possession of the equipment to the lessor/seller.

Pursuant to an agreement drafted by Scott Hibbard, P.G.A., Inc. (PGA) leased an excavator from Hibbard for $4,500 per month, payable in advance of each monthly rental period. The rental term commenced July 29, 1997, with a minimum term of one month. PGA's retention of the excavator beyond the first month extended the lease for each month Hibbard allowed PGA to retain the equipment. Hibbard could terminate the lease at any time following the first month. In typewritten "Additional Terms," the parties agreed: "Maximum rental period is 12 months. Purchase price of above equipment $108,000.00. Lease payments to go toward purchase price less 1% per month interest."

PGA made its first $4,500 payment on June 30 and took delivery of the excavator on July 29. PGA then made 25 timely monthly payments over the next 25 months, retaining the excavator without any objection from Hibbard throughout this time. Following the September 1999 payment, the amount remaining to pay off the $108,000 purchase price was $1,334. PGA nevertheless gave Hibbard an October rental check for $4,500, which bounced. Angry, Hibbard on November 6 attempted to repossess the excavator but failed. Two days later he mailed a letter to PGA terminating the lease and also filed to obtain a writ of possession on the excavator. On November 16 PGA tendered a $4,500 cashier's check to Hibbard, which he held pending the outcome of the litigation.

Finding that PGA had paid sufficient monies under the agreement to satisfy the purchase price, the magistrate court denied the writ of possession. Hibbard appealed to the State Court of Henry County and tried the matter in a bench trial. Following Hibbard's presentation of evidence, the state court judge also denied the writ of possession. Hibbard now appeals the state court ruling to this Court, enumerating four errors.

1. Three of Hibbard's enumerations of error relate to the construction of the contract and the application of the facts thereto. All three enumerations assume that the contract was a lease with an option to buy contract and contend that no evidence supported a finding that the option was ever exercised (whether orally, in writing, or by paying the full purchase price) prior to Hibbard's terminating the contract. A proper construction of the contract defeats these three enumerations.

"[T]he construction of a contract is a question of law for the court based on the intent of the parties as set forth in the contract. . . ."[1] The court follows a three-step procedure in construing contract language: "The trial court must first decide whether the contract language is ambiguous; if it is ambiguous, the trial court must then apply the applicable rules of construction (OCGA § 13-2-2); if after doing so the trial court determines that an ambiguity still remains, the jury must then resolve the ambiguity."[2] As this is a question of law, we review the three-step procedure de novo.[3]

The contract language here is ambiguous. The preprinted terms of the lease provide that "[n]o title to the equipment shall be conveyed to Lessee by the terms of this Lease . . ." and that the "lease is intended as a true lease." The typewritten "Additional Terms" set the maximum rental period at 12 months, announce the purchase price of the excavator to be $108,000, and credit the lease payments toward the purchase price less "1% per month interest." Thus, the printed terms for the most part appear to be a straightforward "true lease" agreement, but the typewritten "Additional Terms" give PGA the right to purchase the equipment for a set price to be paid by crediting portions of lease payments. The reference to interest implies that the price is seller-financed. Notably, the 12-month maximum rental period would not allow the entire amount of the purchase price to be paid off by the $4,500 monthly lease payments prior to the end of the 12 months, leaving unclear how the matter would be handled at the end of the 12 months. Also unclear is the status of the purchase rights if the lease were terminated earlier than the 12-month period, either as a matter of right or as a result of a default under the lease.

In addition to these ambiguities is the argument of Hibbard and the legal conclusion of the state court judge that the agreement is a lease with an option to buy agreement, even though the word

---

[1] *Deep Six v. Abernathy*, 246 Ga. App. 71, 73 (2) (538 SE2d 886) (2000); see OCGA §§ 13-2-1; 13-2-3.

[2] *Deep Six*, supra, 246 Ga. App. at 73 (2), quoting *Travelers Ins. Co. v. Blakey*, 180 Ga. App. 520 (349 SE2d 474) (1986).

[3] *Deep Six*, supra, 246 Ga. App. at 73 (2).

"option" nowhere appears in the contract. The contract also contains no reference to an option exercise period, no language describing a method of exercising an option, etc. And not to be overlooked is that after the 12-month period had expired in July 1998, PGA continued to retain possession of the excavator, making regular monthly payments to Hibbard, who accepted them. When Hibbard in July or August 1998 asked PGA whether it intended to pay off the remainder of the purchase price in a lump sum, PGA responded that it wanted to simply continue paying under the set schedule, to which Hibbard did not object.

We hold the contract was ambiguous. Applying the relevant rules of contract construction, we are able to resolve the ambiguities and thus do not need to go to step three. Two applicable rules are that we construe a contract against its drafter[4] (here Hibbard) and that typewritten provisions prevail over printed provisions.[5] The typewritten provisions here specify a purchase price and describe how it is to be paid. Nothing in the contract requires any kind of option to be exercised nor any kind of notice to be given Hibbard in order for PGA to buy the excavator at the specified price, and we will not insert such terms into the contract so as to limit PGA's purchase rights.[6] The conflicting printed provision that no title shall be conveyed to PGA by the terms of the lease is construed to mean that the contract basically had two parts: the "lease" part setting forth the terms under which PGA leased the vehicle *pending* the full payment of the purchase price (which "lease" part did not convey title), and the "purchase" part setting forth the amount and method of paying the purchase price (which would convey title upon payment of the purchase price).

This was a classic "lease-purchase" contract. The lease part specified the conditions under which PGA could retain and use the excavator while title to the excavator resided in Hibbard. The terms of this lease portion did not purport to convey title of the excavator to PGA. After 12 months, this lease portion was to naturally expire and possession was to return to Hibbard unless PGA paid off the purchase price, which purchase price was calculated by crediting the lease payments as per a specified formula.

When these 12 months came and went, with PGA retaining possession and continuing to make the monthly $4,500 lease payments, then the conduct of the parties modified the contract so as to extend the lease portion, similar to the initial effect of PGA's retaining the

---

[4] *Asian Square Partners v. Ly*, 238 Ga. App. 165, 167 (1) (518 SE2d 166) (1999).
[5] Id.
[6] Cf. *Wilbanks v. Mai*, 232 Ga. App. 198, 199 (501 SE2d 513) (1998).

excavator past the minimum rental term.[7] Thus, the terms of the original lease allowing the lease payments to be credited toward the purchase price continued to govern the relationship between the parties.[8] Similarly, Hibbard retained the right to terminate the lease at any time during this holdover period.

The second portion of the contract was the "purchase" portion, under which PGA had a contractual right to purchase the excavator for $108,000. Credited toward that purchase price were the lease payments as reduced by a one percent monthly interest charge on the outstanding purchase price. The continued payment of lease payments past the 12 months continued to reduce the purchase price as per the formula. Once the entire amount of the purchase price was paid, title to the excavator vested in PGA. Although Hibbard could terminate the lease at any time after the first month, no such termination clause purported to apply to the power to purchase the excavator for the specified price, and we will not insert such a term in a contract drafted by Hibbard.

In this framework we consider the facts as found by the state court judge and as reflected in the evidence construed in favor of the judgment.[9] Through October 28, 1999, PGA was current in its lease payments, which by that time had reduced the purchase price of the excavator to $1,334. Since no rental payment was received by October 29, the lease was in default as per its terms. As title still resided in Hibbard, he had the right per the terms of the lease to remove the excavator from PGA's premises. And he had the right to terminate the lease portion of the contract, whether due to default or as an exercise of his absolute right to do so. He exercised this right of termination on November 8, when he sent a letter of termination to PGA. This, however, did not terminate PGA's right to purchase the excavator for the remaining $1,334. When on November 16 PGA gave Hibbard a $4,500 cashier's check, this more than paid off the remaining amount due under the purchase portion of the contract, and at that point title to the excavator vested in PGA, thus destroying any right of Hibbard to repossess the equipment.

Evidence and a proper construction of the contract supported the state court's denial of the writ of possession.

---

[7] See OCGA § 13-4-4; cf. *Citizens Oil Co. v. Head*, 201 Ga. 542, 543 (2) (40 SE2d 559) (1946) (continuance of possession after expiration of the original term effects an extension of the original lease).

[8] Cf. *Colonial Self Storage &c. v. Concord Properties*, 147 Ga. App. 493, 494 (1) (249 SE2d 310) (1978) (holdover tenant holds premises subject to general terms and conditions of the lease).

[9] See *Emory Rent-All v. Lisle Assoc. Gen. Contractors*, 212 Ga. App. 516 (1) (441 SE2d 926) (1994) (construe evidence to support court's findings against plaintiff in bench trial following presentation of plaintiff's case).

2. Hibbard's fourth enumeration contends that the state court erred in denying Hibbard's motion for new trial based on newly discovered evidence. Specifically, Hibbard claims that he presented evidence to the state court that post-judgment PGA stopped payment on the $4,500 cashier's check and thus never paid the remaining $1,334.

Hibbard failed to preserve the matter for review in that he has not included this new evidence in the record transmitted to this Court. Although his motion for new trial brief purported to attach the evidence to the brief, the record contains no such attachment. Nor does Hibbard include in the record a transcript from the hearing on the motion for new trial, even though the state court relied on that evidentiary hearing in ruling to deny the motion for new trial. "As the record contains no transcript of the hearing held on appellant's motion for a new trial, appellant has failed to carry his burden of showing error in the trial court's ruling, and we must presume that it was correct."[10]

*Judgment affirmed. Andrews, P. J., and Eldridge, J., concur.*

DECIDED AUGUST 2, 2001.

*George C. Creal, Jr.*, for appellant.
*Harrison & Harrison, Stephen P. Harrison*, for appellee.

---

[10] (Citation omitted.) *Carpenter v. Parsons*, 186 Ga. App. 3, 5 (4) (366 SE2d 367) (1988).