### A03A1161. McENTYRE v. EDWARDS et al.
(583 SE2d 889)

BLACKBURN, Presiding Judge.

In this breach of contract action regarding the allegedly negligent construction of a home, Karen McEntyre appeals the jury verdict in favor of "e/p construction, llc" and its general manager, Donald B. Edwards, Jr., contending that the trial court erred by: (1) granting the defendants' motion for directed verdict regarding her claims that defects in the home's foundation wall were fraudulently concealed from her; (2) denying her motion for a directed verdict on the defendants' counterclaim for nominal damages flowing from breach of contract; (3) denying her motion for a directed verdict regarding the defendants' claim for attorney fees and expenses of litigation; (4) improperly restricting her cross-examination and impeachment of Edwards regarding pretrial legal arguments made by his attorneys; (5) failing to properly charge the jury on the law regarding impeachment of witnesses; and (6) failing to charge the jury regarding certain contract principles. For the reasons set forth below, we affirm.

Viewed in the light most favorable to the verdict, the record shows that, on June 12, 1996, McEntyre hired e/p construction and Edwards to build a new home for her. Shortly after construction began, the parties' relationship became combative, and, within less than two weeks, McEntyre hired the first of a number of attorneys to represent her. In addition, McEntyre, who visited the construction site on a daily basis, hired her own home inspector to survey the construction as it was completed.

On February 4, 1997, after McEntyre had already filed numerous complaints about almost every aspect of the construction, the parties discovered that the foundation wall of the home was cracked and defective. After both parties hired inspectors to examine the cracked wall, Edwards offered to repair it, but McEntyre demanded that the wall be torn down and completely replaced. In essence, McEntyre wanted Edwards to start over by replacing the entire foundation. When the parties could not reach an agreement on the appropriate corrective action, McEntyre refused to enter mediation, terminated the contract, and filed suit against the defendants for negligently constructing her home, breach of contract, and fraud.

The matter subsequently went to trial before a jury, and, after all evidence had been presented, the trial court granted the defendants' motion for directed verdict regarding McEntyre's fraud claims. On the remaining claims, the jury found that McEntyre breached the contract with the defendants by prematurely terminating it improperly and ordered her to pay $1 in nominal damages, the amount actually requested by the defendants, and $75,000 in attorney fees and expenses of litigation. McEntyre now appeals.

1. McEntyre contends that the trial court erred by granting the defendants' motion for a directed verdict on her claim for fraud. We disagree.

> On appeal from a trial court's rulings on motions for directed verdict . . . , we review and resolve the evidence and any doubts or ambiguities in favor of the verdict; directed verdicts . . . are not proper unless there is no conflict in the evidence as to any material issue and the evidence introduced, with all reasonable deductions therefrom, demands a certain verdict. Thus, a directed verdict . . . may be granted only when, without weighing the credibility of the evidence, there can be but one reasonable conclusion as to the proper judgment; if the evidence is conflicting, or if insufficient evidence exists to make a "one-way" verdict proper, a directed verdict . . . should not be granted. Furthermore, when considering these motions, trial and appellate courts must view the evidence in the light most favorable to the party securing the jury verdict.

(Punctuation and footnotes omitted.) *Sims v. Heath*.[1]

McEntyre argues that Edwards defrauded her by either concealing the defective condition of the foundation wall or misrepresenting its condition to her. The record, however, fails to support this claim.

---

[1] *Sims v. Heath*, 258 Ga. App. 681, 685-686 (577 SE2d 789) (2002).

To establish fraud, a party must prove five essential elements: "(1) a false representation or omission of material fact; (2) scienter; (3) an intent to induce the party alleging fraud to act or refrain from acting; (4) justifiable reliance; and (5) damages." *Paul v. Destito;*[2] see also OCGA § 51-6-2.

The record shows that, from the moment the construction error was discovered by both parties, the defendants admitted that the foundation wall was defective and needed to be fixed. Edwards did not conceal or misrepresent the condition of the foundation wall to McEntyre. He simply disagreed with her as to how it should be repaired. Moreover, there is no evidence that McEntyre relied on any representations made to her by the defendants. To the contrary, McEntyre questioned almost every action the defendants made. The record reveals that, among other things, she visited the construction site on a daily basis, took pictures of the construction as it occurred, kept a journal detailing her concerns, secretly tape-recorded her conversations with Edwards, and hired her own independent expert to monitor the quality of the construction. Therefore, McEntyre's claims regarding fraudulent concealment are patently untenable.

The trial court did not err in granting the defendants' motion for directed verdict on McEntyre's claims for fraud.

2. McEntyre contends that the trial court erred by denying her motion for a directed verdict on the defendants' counterclaim for damages flowing from McEntyre's breach of contract. Specifically, McEntyre argues that there was no evidence presented which showed that she committed a breach by terminating the contract early. We cannot agree.

As stated above, the record shows that McEntyre quickly became distrustful and dissatisfied with the defendants' work. In fact, she testified at trial that she was not satisfied with a single thing that the defendants did. And, when the dispute over the foundation arose, McEntyre chose to terminate the contract rather than enter into mediation, which the defendants requested. In addition, there was evidence before the jury which indicated that McEntyre's demands that the entire foundation be replaced were both extreme and unnecessary. Based on this evidence, the jury was authorized to determine that McEntyre breached the contract both by making unreasonable demands and terminating the contract based on such demands.

McEntyre also contends that the trial court should have granted her motion for a directed verdict on defendants' counterclaim because defendants failed to prove that they incurred actual damages. Again, this argument lacks merit. A showing of actual damages was simply

[2] *Paul v. Destito*, 250 Ga. App. 631, 635 (1) (550 SE2d 739) (2001).

not required. At trial, the defendants sought *nominal* damages, as they had a right to do. OCGA § 13-6-6 provides: "In every case of breach of contract the injured party has a right to damages, but if there has been no actual damage, the injured party may recover nominal damages sufficient to cover the costs of bringing the action." The trial court did not err.

3. McEntyre contends that the trial court erred by denying her motion for a directed verdict on the defendants' claim against her for attorney fees. Specifically, McEntyre argues that the defendants were not entitled to any damages and, as such, they were also not entitled to attorney fees. As we have determined otherwise in the preceding Division, this enumeration lacks merit.

4. McEntyre contends that the trial court improperly restricted her cross-examination and impeachment of Edwards. Specifically, McEntyre argues that she should have been allowed to cross-examine Edwards about allegedly inconsistent pretrial arguments made by his attorneys for impeachment purposes.

McEntyre contends that, prior to trial, the defendants' position was "more belligerent" because they contended that delays in construction caused by McEntyre contributed to the cracking of the foundation wall. During trial, the defendants did not place any blame on McEntyre, accepted responsibility for the cracked wall, and argued simply that they could not agree with McEntyre about the appropriate remedy. McEntyre now contends that she should have been allowed to use the "more belligerent" arguments to impeach Edwards.

The trial court did not err by determining that these legal arguments previously made by the defendants' counsel could not be used as a prior inconsistent statement to impeach Edwards. The prerequisites for impeaching a witness with a prior inconsistent statement are well settled: "First, the prior statement must contradict or be inconsistent with the witness's in-court testimony; second, the prior statement must be relevant to the case; and, third, the examining attorney must lay the proper foundation with the witness." (Punctuation omitted.) *Wynn v. State*.[3]

As an initial matter, the allegedly impeaching statements were made by Edwards' counsel, not Edwards. McEntyre has provided us with no legal authority that legal arguments of counsel may be later used against their clients, and we decline to create such a rule. Moreover, even if exclusion of the "impeaching" statements was assumed to be erroneous, we fail to see how McEntyre could have been harmed because, at trial, the defendants admitted that the foundation wall

---

[3] *Wynn v. State*, 272 Ga. 861, 862 (2) (535 SE2d 758) (2000).

was defective. The trial court did not err in denying McEntyre's request to either impeach or cross-examine Edwards regarding his attorneys' prior arguments.

5. McEntyre contends that the trial court failed to properly charge the jury regarding the impeachment of witnesses. We disagree. The jury instruction given by the trial court mirrored the suggested pattern instruction on impeachment for civil trials. Accordingly, the trial court's instructions were proper.

6. Finally, McEntyre contends that the trial court erred by denying her request to instruct the jury that: "Even though the constructed product actually received under the contract may be suitable for the purpose, each contracting party is entitled to receive the constructed product anticipated by the contract, unless the party waives it." McEntyre cited *Candler Investment Co. v. Cox*[4] for this proposition. The trial court did not err by refusing to give this charge.

> A request to charge must embody a correct, applicable and complete statement of law, legal and perfect in form and adjusted to the pleadings and evidence; it must not be argumentative or seek an expression of opinion on the part of the court; and it must not be so phrased as to have tendency to confuse and mislead the jury or to becloud the issues in the case.

(Punctuation omitted.) *Bakery Svcs. v. Thornton Chevrolet.*[5]

In this case, the requested charge was not adjusted to the evidence. Unlike *Candler Investment,* supra, this case does not revolve around the substitution of one item for another completely different item. The contract in issue specifies that the foundation would be concrete, six to ten inches thick, with an exterior of above-grade stucco, and with french drain waterproofing. This is what the defendants intended to build for McEntyre, and, indeed, attempted to do so. The only question in this case revolves around the method of building what the contract called for, not substituting something else altogether. As such, McEntyre's instruction based on *Candler Investment* was properly refused.

*Judgment affirmed. Ellington and Phipps, JJ., concur.*

DECIDED JUNE 20, 2003 —

---

[4] *Candler Investment Co. v. Cox,* 4 Ga. App. 763 (62 SE 479) (1908).
[5] *Bakery Svcs. v. Thornton Chevrolet,* 224 Ga. App. 31, 33 (3) (479 SE2d 363) (1996).

*Cauthorn & Norh, Thomas E. Cauthorn III, Melissa M. Nohr, Lisa A. Owen,* for appellant.

*Womble, Carlyle, Sandridge & Rice, Nisbet S. Kendrick III, Carl L. Meyer,* for appellees.