A06A0270. BROCK v. KING et al.
(629 SE2d 829)

PHIPPS, Judge.

Richard T. Brock sold land to developer D. Kimbrough King for inclusion in a subdivision that King was building. After development began, Brock sued King and three companies with which he was affiliated, alleging that the defendants had committed fraud and breach of contract by failing to honor contractual limitations on development that were designed to protect Brock's privacy. The trial court directed a verdict for the defendants on the fraud claim, and a jury found in their favor on the contract claim and awarded them attorney fees and litigation expenses. Brock appeals, asserting that the court erred by (1) denying his motion for directed verdict on the contract claim, (2) directing a verdict for the defendants on the fraud

---

[19] Compare *Nash v. State*, 271 Ga. 281 (519 SE2d 893) (1999).

claim, and (3) failing to give his requested jury instruction on nominal contract damages. We uphold the court's directed verdict rulings, but its failure to give the requested nominal damages charge was error. We therefore affirm in part and reverse in part.

The record shows that Brock owned a home and eight acres of land in Atlanta. In 1997, he decided to sell three of the acres. King approached Brock seeking support for his plans to build a subdivision on 11 acres that he had bought adjacent to Brock's. In December 1997, after negotiations and meetings, Brock signed a contract with Five Kings, Inc., a corporation with which King was affiliated. In the contract, Brock agreed to sell Five Kings three of his acres for inclusion in the subdivision and to support King's efforts to obtain favorable rezoning from the city. Five Kings agreed to certain restrictions on development, including maintaining densely landscaped buffers between Brock's home and the new homes, designing and implementing additional landscaping, limiting the size of the new homes, and repairing any construction-related damage to a lake behind Brock's house.

The contract referred to and incorporated an attached site plan that had been prepared by Five Kings' architect and that depicted the buffers and homes to be built on adjacent lots. The contract also provided that its restrictions on development would survive closing, and that the agreement could be amended only by a signed writing. Finally, the contract stated that the prevailing party in any litigation to enforce contractual rights and obligations would be entitled to recover actual attorney fees and expenses.

After the parties signed the contract, Five Kings proceeded with plans for developing the subdivision, known as 675 West Paces Ferry. It submitted to the city — and to Brock's attorney — a "Final Plat" and a declaration of covenants and restrictions for the property. After the city approved the rezoning request and the final plat, Brock and Five Kings closed on their contract. With Brock's consent, Five Kings assigned the contract to another entity affiliated with King, 675 West Paces Associates, LLC.

In October 2000, Brock sued King, Five Kings, 675 West Paces Associates, and a third related entity, Kim King Associates, Inc., alleging fraud and breach of contract.[1] Brock alleged that the defendants had not complied — and had never intended to comply — with the development restrictions in the contract. Specifically, Brock asserted that the buffers were too small, the new homes were too

---

[1] Brock also sued the architect, Harrison, and his firm, Harrison Design Associates, but he later dismissed his claims against them.

large, the lake had been damaged and not repaired, and defendants had not paid for the promised additional landscaping.

The case went to trial, and at the close of evidence Brock moved for a directed verdict on the contract claim and the defendants sought a directed verdict on the fraud claim. The trial court denied Brock's motion, granted defendants', and submitted the contract claim to the jury. The jury found in favor of defendants and awarded them $353,547.55 in attorney fees and litigation expenses.[2] Brock then moved for judgment notwithstanding the verdict on the contract claim, but the court denied that motion.

1. Brock contends that the court should have directed a verdict in his favor on the contract claim.

> A directed verdict is proper only if there is no conflict in the evidence as to any material issue and the evidence introduced, with all reasonable deductions therefrom, shall demand a particular verdict. In determining whether any conflict in the evidence exists, the court must construe the evidence most favorably to the party opposing the motion for directed verdict. The standard used to review the grant or denial of a directed verdict is the any evidence test. The question before this court is not whether the verdict and the judgment of the trial court were merely authorized, but is whether a contrary judgment was demanded.[3]

(a) Brock claims that the undisputed evidence shows that defendants breached the contract by maintaining significantly smaller buffers than those depicted on the site plan, which was a clear and binding part of the contract. Defendants counter that the site plan was merely a preliminary guideline that was meant to "evolve" over time, not to impose rigid, inflexible requirements. They point out that Brock never objected to the final plat, which was provided to his lawyer before closing and which showed smaller buffers than the earlier site plan. Alternatively, they contend that the development did, in fact, comply with the site plan.

"The construction of a contract is a question of law for the court."[4] In this case, the contractual provision relating to buffers stated:

---

[2] The court later awarded defendants additional attorney fees and expenses, for a total of more than $500,000, to cover expenditures through the end of trial.

[3] *Robert E. Canty Bldg. Contractors v. Garrett Machine &c.*, 270 Ga. App. 871, 872 (1) (608 SE2d 280) (2004) (citations and punctuation omitted).

[4] OCGA § 13-2-1; see also *Neely Dev. Corp. v. Service First Investments*, 261 Ga. App. 253, 255 (582 SE2d 200) (2003).

> The Site Plan attached hereto as Exhibit "A" depicts a landscape buffer along the western edge of the existing lake . . . and a landscape buffer along the northern portion of the Property. . . . The deeds of conveyance to the respective property owners purchasing lots within the West Paces Property and Property will contain . . . restrictions which will assure that the Buffer Areas remain a densely land-scaped area, in perpetuity, unless mutually agreed to by all adjoining property owners.

Thus, the contract described the buffers as "densely landscaped," but it did not list any minimum size requirements. And although the buffer provision of the contract referred to the attached site plan, which depicted buffers, the contract did not state that the buffers had to conform to the site plan. Assuming a conformity requirement can be inferred from the buffer provision's reference to the site plan, nothing in the contract suggests that such conformity had to be rigid and exact. We cannot insert a requirement of rigid conformity into the contract where the parties — both of whom were represented by counsel — did not include one.[5] If Brock had wanted buffers of certain dimensions, or in rigid conformity with the site plan, he could have worded the contract accordingly.

In any event, defendants presented evidence at trial that the buffers did comply with the site plan. Brock's attorney testified that he reviewed the final plat and saw nothing, "in terms of set backs or buffers," that was inconsistent with the contract. And Harrison, the architect, testified that both the final plat and the ultimate develop-ment were consistent with the site plan. Thus, there was some evidence from which the jury could have concluded that defendants did not breach the buffer provision of the contract, and a directed verdict was not authorized.

(b) Brock claims that defendants breached the contract by build-ing homes that were too large, in violation of a contractual provision "restricting the size of newly constructed residential units to 3,000 to 6,500 square feet." Defendants argue that the provision referred to the industry custom definition of square footage, which includes only *heated* square feet, and that it is undisputed that the heated square footage of the new homes in the subdivision fell within the contrac-tual limits.

---

[5] See *Hibbard v. P.G.A., Inc.*, 251 Ga. App. 68, 70 (1) (553 SE2d 371) (2001) (refusing to insert a term into a contract where the parties did not include it).

Ordinarily, words in a contract are given their usual, common meaning.[6] But "words used in a particular trade or business will be construed, generally, to be used in reference to this peculiar meaning."[7] The meanings of terms "as understood in the trade and by the contracting parties, may be explained by parol proof of this trade usage and custom."[8] Defendants presented evidence that the term "square feet" is commonly used and understood in the real estate industry to refer to heated square feet. In light of this evidence, the trial court properly refused to direct a verdict for Brock on the claim that the homes built by defendants ran afoul of the contract's square footage limitation.

(c) Brock argues that defendants breached the contract as a matter of law by failing to pay $50,000 for additional landscaping, but defendants point out that the contract only obligated them to pay if the parties "mutually agree on [a] landscape design." Defendants presented evidence that they hired a landscape architect to work with Brock, but Brock rejected the architect's designs. Thus, a directed verdict was not authorized.

(d) Although Brock contends that defendants undisputedly failed to repair damage to the lake, as the contract required, they presented evidence that an independent company assessed the lake and found minimal damage to a portion that Brock did not own, and that defendants paid the cost of repairs. This evidence foreclosed a directed verdict for Brock.

2. Defendants sought a directed verdict on Brock's fraud claim, arguing that it was barred by the contract's merger clause. The court granted the motion. Brock argues that the ruling was error because the merger clause did not bar his claim that King had signed the contract with no intention of fulfilling his promises. There are two problems with Brock's argument.

First, he presented no evidence of fraud. Actionable fraud does not result from a mere failure to perform promises made; otherwise, any breach of contract would amount to fraud.[9] Fraud does occur, however, when a party enters into a contract with no present intention of performing his promises.[10] But Brock points to no evidence in the record that King did not intend to perform his obligations under

---

[6] OCGA § 13-2-2 (2).

[7] Id.

[8] *Southland Dev. Corp. v. Battle*, 272 Ga. App. 211, 214 (612 SE2d 12) (2005) (citation and punctuation omitted).

[9] *Buckley v. Turner Heritage Homes*, 248 Ga. App. 793, 795 (3) (547 SE2d 373) (2001).

[10] Id.

the contract *when he signed* it on behalf of Five Kings. Thus, the court did not err in ruling in favor of defendants as a matter of law on the fraud claim.[11]

Second, Brock did not rescind the contract, but instead sued to enforce it. "In an action for fraud, if the defrauded party has not rescinded but has elected to affirm the contract, he is relegated to a recovery in contract and the merger clause will prevent his recovery."[12] Brock argues that rescission was not required here because he discovered the fraud long after closing, when the parties could not have been returned to their original positions.[13] But the record shows that Brock's attorney received the final plat, showing a smaller landscape buffer than indicated on the site plan, *before* closing. Rather than electing not to close, however, Brock proceeded with the transaction. Brock also seeks shelter under the rule that a defrauded party need not rescind the contract when the alleged misrepresentation is contained in the contract itself.[14] But Brock failed to show that any provision of the contract was false on its face.[15] The court did not err by directing a verdict for defendants on the fraud claim, and we affirm the judgment against Brock on that claim.

3. Brock submitted the following written request to charge: "In every case of breach of contract, the party not breaching it has a right to damages. But, if there has been no actual damage, the plaintiff can recover nominal damages which will carry the costs." The court did not give the charge, and Brock objected to the omission.[16] Brock contends that the court's failure to charge the jury on nominal damages was error. "As a general rule a requested charge should be given where it has been raised by the evidence, embraces a correct and complete principle of law, has not been substantially included in

---

[11] See id.

[12] *WirelessMD v. Healthcare.com Corp.*, 271 Ga. App. 461, 469 (3) (610 SE2d 352) (2005) (citation omitted).

[13] See *Crews v. Cisco Bros. Ford-Mercury, Inc.*, 201 Ga. App. 589, 591 (1) (411 SE2d 518) (1991) (rescission not necessary where defrauding party has made it impossible or where it would be unreasonable).

[14] See *Authentic Architectural Millworks v. SCM Group USA*, 262 Ga. App. 826, 827-828 (2) (586 SE2d 726) (2003).

[15] Compare id. at 828 (2) (a) (finding valid a fraud claim based on sales contract's allegedly false representations about technical capabilities of router).

[16] Defendants assert that Brock did not object to the court's failure to give the requested charge, but the record plainly shows otherwise. After completing jury instructions, the court asked the lawyers if there were any exceptions to the charge. Brock's lawyer responded, in relevant part, "[W]e . . . except to those charges that we requested which weren't given, . . . 16 through 29." The charge at issue was Plaintiff's Request to Charge No. 20 – clearly within the range specified by counsel.

the general instructions given, and is specifically adjusted to the evidence."[17] Because these criteria were met here, we agree with Brock.

First, the requested charge unquestionably was a correct statement of law. "[I]n every breach of contract the injured party has a right to damages, and if there has been no actual damage, the injured party may recover nominal damages sufficient to cover the costs of bringing the action."[18] Nominal damages are generally defined as "a trivial sum awarded where a breach of duty or an infraction of the plaintiff's right is shown, but no serious loss is proved."[19] The requested charge was taken from the Suggested Pattern Jury Instructions[20] and quoted verbatim the language of OCGA § 13-6-6.

Second, the requested charge was not substantially included in the instructions given. To the contrary, the court's instructions suggested that the jury had to find for defendants unless Brock could prove actual damages. The court told the jury:

> [T]o prevail on his claim for breach of contract, the plaintiff must prove each of the following elements by a preponderance of the evidence: That 675 LLC failed to do something that it was obligated to do under the terms of the agreement; and, two, that he suffered damages as a result of this failure. If you find that both of these elements have been proven by a preponderance of the evidence, then you must return a verdict in favor of the plaintiff on his claim. If you find, however, that *one or* both of these elements have not been proven by the evidence, then you must return a verdict in favor of the defendants on this claim.[21]

These instructions, without an accompanying charge on nominal damages, likely left the jury with the mistaken impression that Brock had to prove actual damages in order to win his breach of contract claim. And the verdict form could only have magnified that misimpression. It read:

> ___ We the jury find for the **PLAINTIFF** and award Plaintiff $___ Actual Damages

---

[17] *Joiner v. Lane*, 235 Ga. App. 121, 122 (2) (508 SE2d 203) (1998) (citation omitted).

[18] *Botterbusch v. Preussag Intl. Steel Corp.*, 271 Ga. App. 190, 195 (1) (b) (609 SE2d 141) (2004) (citation and punctuation omitted).

[19] *First Fed. S & L Assn. &c. v. White*, 168 Ga. App. 516, 516-517 (3) (309 SE2d 858) (1983) (citations and punctuation omitted); see also *McEntyre v. Edwards*, 261 Ga. App. 843, 845-846 (2) (583 SE2d 889) (2003).

[20] See Suggested Pattern Jury Instructions, Vol. I: Civil Cases, § 18.012.

[21] (Emphasis supplied.)

$_____ Attorneys' Fees and Expenses of Litigation
___ We the jury find for the **DEFENDANTS** and award
Defendants
$_____ Attorneys' Fees and Expenses of Litigation

The inclusion of a space for *actual* damages, but none for nominal damages, indicated — wrongly — that only the former were available.

Third, the requested charge was adjusted to the evidence in the case. Brock sought damages for breach of contract; thus, he was entitled to nominal damages if the jury found that defendants had breached the contract.[22]

Defendants argue that nominal damages were not at issue in light of the attorney fees provision in the contract. That provision, however, merely awarded actual attorney fees and litigation expenses to the "prevailing party" in any legal action to enforce contractual rights and obligations; it did not abrogate Brock's right to have the jury consider an award of nominal damages. Nominal damages, after all,

> are not given as compensation for the breach of a contract, but simply in vindication of the right of a person who brings an action upon a good cause, but fails to prove that he has sustained any actual damage, *and to prevent his being mulcted in the costs after he has established his cause of action.*[23]

Under the evidence presented, the jury could have concluded that defendants had breached the contract, but Brock had failed to prove actual damages. In that event, Brock would have been the "prevailing party" under the contract — and he could have recovered nominal damages *and* attorney fees and expenses.

But the trial court's failure to give the requested nominal damages charge, coupled with the use of a verdict form that specified actual damages but not nominal damages, improperly removed the

---

[22] Although Brock's complaint sought only actual damages, "it is not necessary to pray specifically for general or nominal damages in order to present a question for the jury as to nominal damages." *Bradley v. Godwin*, 152 Ga. App. 782, 788 (3) (264 SE2d 262) (1979) (physical precedent only); see also *Corrosion Control v. William Armstrong Smith Co.*, 157 Ga. App. 291, 293 (277 SE2d 287) (1981).

[23] *Foote & Davies Co. v. Malony*, 115 Ga. 985, 988 (4) (42 SE 413) (1902) (emphasis supplied).

issue of nominal damages from the jury's consideration.[24] We therefore reverse the judgment entered against Brock on the contract claim.

4. In light of our holding in Division 3, we do not reach Brock's remaining claims of error.

*Judgment affirmed in part and reversed in part. Ruffin, C. J., and Smith, P. J., concur.*

ON MOTION FOR RECONSIDERATION.

Defendants/Appellees seek reconsideration of our holding in Division 3 that the trial court erred by failing to give Brock's requested jury charge on nominal damages. They cite, for the first time, the Supreme Court's decision in *Magnetic Resonance Plus v. Imaging Systems Intl.*,[25] in which the Court held that a party that failed to obtain any of the relief it sought on its breach of contract claim could not be the "prevailing party" for the purpose of a contractual fee-shifting provision.[26] They argue that, under *Magnetic Resonance Plus*, the jury's decision to award Brock no actual damages means that he was not the prevailing party under the contract and therefore was not contractually entitled to attorney fees. According to defendants, "[b]ecause an award of nominal damages would not have converted [Brock] into the prevailing party, a specific charge on nominal damages was unnecessary."

The plaintiff in *Magnetic Resonance Plus* did not seek nominal damages in the pretrial order or at trial.[27] Thus, the Supreme Court did not consider whether an award of nominal damages could constitute sufficient relief to enable a party to claim "prevailing party" status under a contractual fee-shifting provision. Defendants argue that an award of nominal damages cannot confer "prevailing party" status, and they point to the common description of nominal damages as a "trivial" sum.

> However, in Georgia, the term "nominal damages" is purely relative, and carries with it no suggestion of certainty as to amount. Instead of being restricted to a very small amount, the sum awarded as nominal damages may, according to circumstances, vary almost indefinitely. In some cases a

---

[24] See *Bradley*, supra at 785; *Corrosion Control*, supra at 293.

[25] 273 Ga. 525 (543 SE2d 32) (2001).

[26] Id. at 527-529 (3).

[27] *Imaging Systems Intl. v. Magnetic Resonance Plus*, 227 Ga. App. 641, 646 (3) (490 SE2d 124) (1997).

very small amount might constitute the trivial sum contemplated by the term "nominal damages"; in others a much larger amount might measure down to the same standard of triviality.[28]

Thus, "nominal" does not necessarily mean "small." Moreover, "[a] recovery may be classified as coming under the definition of nominal damages where the violation of a right is shown, substantial damages claimed, and some actual loss proved, and yet the damages are not susceptible of reasonable certainty of proof as to their extent."[29] For these reasons, we reject defendants' argument that a party who wins nominal damages cannot be considered a "prevailing party."

In any event, even if an award of nominal damages would not have entitled Brock to attorney fees under the contract, Georgia law still provides for the recovery of nominal damages. And as explained in Division 3, the court's charge failed to inform the jury that such damages were available. Accordingly, we deny defendants' motion for reconsideration.

DECIDED MARCH 10, 2006 —
RECONSIDERATION DENIED MAY 12, 2006 — 

*Jones, Jensen & Harris, Taylor W. Jones, Jenny E. Jensen, Richard E. Harris,* for appellant.

*Paul, Hastings, Janofsky & Walker, John G. Parker, William K. Whitner,* for appellees.

---

[28] *Wright v. Wilcox,* 262 Ga. App. 659, 663 (2) (586 SE2d 364) (2003) (citation and punctuation omitted).

[29] *Duckworth v. Collier,* 164 Ga. App. 139, 141 (296 SE2d 640) (1982) (citation and punctuation omitted).