76683. DeKALB COUNTY v. ROCKDALE PIPELINE, INC.
(375 SE2d 61)

McMurray, Presiding Judge.

Appellant DeKalb County, Georgia ("DeKalb County") entered into a contract under which appellee Rockdale Pipeline, Inc.

("Rockdale") was to install underground pipes for a sewer project. The contract, which was drawn by DeKalb County, specified that Rockdale would be paid $30 per cubic yard for the excavation of an estimated 7,000 cubic yards of rock; and that the rock excavation "shall be measured for payment from centerline profile, down to a depth six (6) inches below the bottom of the pipe barrel . . ." The construction drawings entitled "Plan and Profile," which were incorporated by reference in the contract, depicted a vertical measurement for excavation down from the current roadbed grade or ground surface. Before the contract was signed DeKalb County determined and so informed Rockdale, that when rock was encountered "it would be measured from the centerline profile of the ground or the street rather than the centerline profile of the rock."

From the time of the execution of the contract on November 7, 1983, until late April of 1984, DeKalb County approved two pay requests by Rockdale for rock excavation measured from the ground or street profile. After submission of a third pay request, DeKalb County informed Rockdale that a third party to the contract, the Georgia Environmental Protection Division, sought to impose a different method of compensation, to be measured from the subterranean rock surface rather than the centerline profile or ground surface. Rockdale did not agree to this proposal and no change order was executed affecting the work in dispute. Rockdale excavated 6,352.10 cubic yards of rock (10 percent less than the quantity estimated by DeKalb County to be encountered), and sought payment at $30 a cubic yard for a total of $190,563. When DeKalb County paid Rockdale only $94,133.40, it brought this suit to recover the unpaid balance, plus interest.

At a pretrial hearing DeKalb County stipulated that the quantity of rock excavation claimed by Rockdale was accurate if it were measured from the ground profile or surface level. The only questions before the court were how "rock" was defined under the contract for purposes of excavation; and what method was contemplated in the contract to measure the amount of rock excavated. After oral argument both parties submitted motions for summary judgment. The trial court granted Rockdale's motion, judgment was entered for full payment of the rock excavated from the ground surface profile, and this appeal ensued. *Held*:

1. DeKalb County contends that the trial court erroneously construed the clear and unambiguous provision of the contract defining the rock to be measured for compensation. Section 1.07 (f) of the contract provides, in pertinent part: "Solid rock shall consist of such materials in their original bed or well-defined ledges, which in the opinion of the Engineer, cannot be removed with pick and shovel, ditching machine, backhoe or other similar devices, and which require drilling and blasting, or use of jack-hammers or bullpoints." DeKalb

County insists that because this definition clearly excludes dirt or "overburden," Rockdale is not entitled to compensation for removal of soil it encountered during the process of reaching solid rock below the surface of the ground.

We do not agree. This argument ignores the express terms of the contract drafted by DeKalb County providing for compensation for the excavation of rock "from the centerline profile, down to a depth of six (6) inches below the bottom of the pipe barrel. . . ." The project drawings, incorporated as part of the terms and conditions of the contract and thus an essential part of the construction agreement, consistently depict in the plan and profile that the project is to be measured from the surface level down. As noted by the trial judge, "centerline profile" is a common engineering term used to indicate ground surface or street level. "Centerline" is defined by the U. S. Department of Interior as "[a] line marked on the roof of a roadway . . ." A Dictionary of Mining, Mineral & Related Terms, 188 (P. Thrush ed. 1968). The meaning of "profile" is stated as "[a] drawing used in civil engineering to show a vertical section of the ground along a surveyed line or graded work." Ibid at 867. Moreover, the engineering supervisor of the project, who was employed by DeKalb County, specifically identified the "centerline profile" in the contract as ground or street level. These definitions were considered by the trial court in construing the contract.

" 'Words generally bear their usual and common signification; but technical words, or words of art, or used in a particular trade or business, will be construed, generally, to be used in reference to this peculiar meaning . . .' 'Ambiguities in terms used in written contracts, and their meanings as understood in the trade and by the contracting parties, may be explained by parol proof of this trade usage and custom.' [Cit.] Parol evidence is admissible to explain the meaning of technical terms employed in written contracts. [Cit.]" *Pace Constr. Corp. v. Houdaille-Duval-Wright Div.*, 247 Ga. 367, 368 (276 SE2d 568) (1981). The clear and unambiguous terms of the contract, once the technical meanings are defined, demand the conclusion reached by the trial court: that compensation for rock excavation was to be calculated from the ground or surface profile above the solid rock which Rockdale had to drill and blast. OCGA § 13-2-2 (4).

2. The trial court further stated in its judgment that its construction of the contract was "also consistent with the parties' intent as evidenced by the documents supporting the motions for summary judgment." DeKalb County asserts that allowance of parol evidence to prove the parties' intent was reversible error. However, OCGA § 13-2-3 declares that "[t]he cardinal rule of construction is to ascertain the intention of the parties." "It is ordinarily the duty of the court to interpret a contract as a matter of law and, where necessary, to con-

strue it by applying the rules of construction set forth in OCGA § 13-2-2. [Cits.] . . . Where the language of an instrument may fairly be understood in more than one way, it should be interpreted to reflect the sense in which the parties understood it at the time of execution, and extrinsic evidence is admissible to establish what that original understanding was. [Cit.] That meaning is to be preferred which will give effect to the contract as a whole. OCGA § 13-2-2 (4)." *Gans v. Ga. Fed. Savings &c. Assn.*, 179 Ga. App. 660, 662 (1) (347 SE2d 615) (1986). Thus, the trial court did not err in considering affidavits and depositions "which sought to illuminate the intention of the parties at the time of the agreement." *Tidwell v. Carroll Bldrs.*, 251 Ga. 415, 417 (1) (306 SE2d 279) (1983). Accord *Doyle v. Estes Heating &c., Inc.*, 173 Ga. App. 491 (2) (326 SE2d 846) (1985).

This evidence showed that immediately prior to execution of the contract and at a meeting held nine days thereafter, DeKalb County informed Rockdale that it intended to pay for removal of rock measured from ground level to six inches below the pipe; and that two such payments were submitted and approved. Only after being questioned by representatives of the Georgia Environmental Protection Division did DeKalb County attempt to change this method of measurement, without the approval of Rockdale. There being no showing of any genuine issues of material fact, nor erroneous findings or errors of law in the judgment of the trial court, there are no grounds for reversal.

*Judgment affirmed. Pope and Benham, JJ., concur.*

DECIDED SEPTEMBER 22, 1988 —
REHEARING DENIED OCTOBER 14, 1988 —

*Albert Sidney Johnson, Herbert Adams, Jr.*, for appellant.
*Smith, Currie & Hancock, James F. Butler III, Joseph C. Staak*, for appellee.