A04A1941. SOUTHLAND DEVELOPMENT CORPORATION
et al. v. BATTLE et al.
(612 SE2d 12)

MIKELL, Judge.

Southland Development Corporation, Bryant Properties, Inc., and L & B Properties, Inc. (collectively, "Southland"), appeal an interlocutory injunction granted to Lura Battle and six other homeowners in The Southland subdivision in DeKalb County. The injunction prohibits Southland from building any town homes or condominiums in the subdivision pending final adjudication of appellees' petition for declaratory and injunctive relief. Because there is evidence at this stage of the litigation to support the trial court's ruling that the subdivision's Declaration of Covenants, Conditions, and Restrictions ("the Covenants") preclude the development of attached dwellings, we affirm. The relevant facts follow.

The subdivision is a master planned residential community in Stone Mountain with a swim and tennis club and a golf club. It is comprised of approximately 900 single-family detached homes. The property's zoning allows attached housing. In November 2003, Southland obtained the appropriate permits to build condominiums on 1.8 acres of land in the subdivision. Southland planned to erect three

buildings comprised of nineteen two-story units. Appellees objected, but Southland continued to grade the land in preparation for construction.

Appellees then filed a complaint alleging that the construction of condominiums violated the Covenants. Appellees prayed for declaratory and injunctive relief, as well as for attorney fees, and filed a motion for a temporary restraining order (TRO). In their brief, appellees cited various provisions in the Covenants. Paragraph 2.01 restricts "[a]ll Lots within the Residential Development . . . exclusively to single-family residential use." "Lot," in turn, is defined in relevant part as "any unimproved portion of the Property upon which it is intended that a Dwelling shall be constructed." "Dwelling" is defined as "any improved property intended for use as a single-family detached dwelling or as a patio or cluster home, located within the Residential Development." Finally, "Residential Development" means "only that portion of the Property which is subdivided into Lots designed for the construction thereon of Dwellings." Based on the definition of dwelling as a single-family detached home, a patio home, or a cluster home, appellees contended that the Covenants forbid the construction of town homes and condominiums.

In support of their motion for a TRO, appellees submitted the affidavit of Betty Hoffman, who has been a licensed Realtor in Georgia since 1985. Hoffman averred that she has expertise in the standard real estate industry usage of various listing terms, including condominium, town home, cluster home, and patio home. Hoffman explained that cluster homes and patio homes are single-family detached dwellings that do not share common walls with other residences, while town homes and condominiums are attached dwellings that share common interior walls. She further averred that standard industry usage of the terms cluster home and patio home do not include town home-style condominiums. Hoffman attached to her affidavit a standard industry list of real estate term definitions. "Cluster housing" is defined therein as "a subdivision technique in which detached dwelling units are grouped relatively close together, leaving open spaces as common areas." "Patio home" is defined as "[a] single-family home . . . often with one outside wall of the structure sitting on the property line. Patio homes have no common structural walls with adjoining properties. . . ."

In addition, appellees tendered the affidavit of Virginia Harris, a licensed broker and current Compliance Administrator with the Georgia MLS real estate listing service. One of her jobs is to make sure that properties are listed in the proper category of residence as defined by Georgia MLS. Harris averred that in Georgia MLS, cluster homes and patio homes are single-family detached dwellings that do not share common walls with other residences, while town homes and

condominiums are attached dwellings that share common walls. Cluster homes are listed along with other single-family detached dwellings, while town homes and condominiums are listed separately along with all the attached dwellings.

At the hearing held on the motion, the trial court announced that it was granting a TRO. However, the court entered an interlocutory injunction banning the construction of condominiums in the subdivision until the case is finally adjudicated.[1] Southland appeals the interlocutory injunction.

Our analysis begins with the appropriate standard of review.

> In granting or refusing preliminary injunctive relief the trial court has a wide discretion that will not be disturbed by this court unless a manifest abuse of that discretion is shown. [Cit.]; OCGA § 9-5-8, or, as alternatively stated, unless there was no evidence on which to base the ruling. *Sea Island Bank v. First Bulloch Bank &c. Co.*, 245 Ga. 715, 716 (1) (267 SE2d 12) (1980).[2]

Next, because the outcome is dependent upon the proper interpretation of the Covenants, we set out the rules of contract construction:

> In Georgia, the construction of contracts involves three steps. At least initially, construction is a matter of law for the court. First, the trial court must decide whether the language is clear and unambiguous. If it is, the court simply enforces the contract according to its clear terms; the contract alone is looked to for its meaning. Next, if the contract is ambiguous in some respect, the court must apply the rules of contract construction to resolve the ambiguity. Finally, if the ambiguity remains after applying the rules of construction, the issue of what the ambiguous language means and what the parties intended must be resolved by a jury. The existence or nonexistence of an ambiguity is a question of law for the court. If the court determines that an ambiguity

---

[1] See *Kinard v. Ryman Farm Homeowners' Assn.*, 278 Ga. 149 (598 SE2d 479) (2004) ("The purpose for granting interlocutory injunctions is to preserve the status quo, as well as balance the conveniences of the parties, pending a final adjudication of the case.") (citation and punctuation omitted).

[2] (Citation and punctuation omitted.) *Glen Oak, Inc. v. Henderson*, 258 Ga. 455-456 (1) (369 SE2d 736) (1988).

exists, however, a jury question does not automatically arise, but rather the court must first attempt to resolve the ambiguity by applying the rules of construction in OCGA § 13-2-2.[3]

One rule of construction provides that "[w]ords generally bear their usual and common signification; but technical words, words of art, or words used in a particular trade or business will be construed, generally, to be used in reference to this peculiar meaning."[4] "Ambiguities in terms used in written contracts, and their meanings as understood in the trade and by the contracting parties, may be explained by parol proof of this trade usage and custom. Parol evidence is admissible to explain the meaning of technical terms employed in written contracts."[5]

Guided by these precepts, we address Southland's enumerations of error.

1. Southland first alleges that in granting the injunction, the trial court ignored the plain and unambiguous meaning of the Covenants. Specifically, Southland asserts that no provision limits the construction of dwellings to detached housing. As noted above, "dwelling" is defined in pertinent part as "a single-family detached dwelling or as a patio or cluster home." Southland contends that only one reasonable interpretation of this definition is possible; namely, that the presence of the word "or" after the word "detached" means that either detached or attached housing is permissible. This construction is strained. The Covenants expressly permit only three types of housing in the subdivision: single-family detached homes, patio homes, and cluster homes. Neither "patio home" nor "cluster home" is defined in the Covenants. The absence of a definition created an ambiguity for the trial court to resolve by applying the rules of contract construction. Accordingly, the trial court properly considered parol evidence introduced by appellees that "patio home" and "cluster home" are "words used in a particular trade" as contemplated by OCGA § 13-2-2 (2). The affidavits before the trial court at this stage of the litigation indicated that standard industry usage of the terms "patio home" and "cluster home" do not include town homes or condominiums. Therefore, the trial court did not manifestly abuse its discretion in granting the injunction, as there was evidence on which to base its ruling.[6]

---

[3] *White v. Kaminsky*, 271 Ga. App. 719 (610 SE2d 542) (2005), citing *Woody's Steaks, LLC v. Pastoria*, 261 Ga. App. 815, 817 (1) (584 SE2d 41) (2003).

[4] OCGA § 13-2-2 (2).

[5] (Citations and punctuation omitted.) *DeKalb County v. Rockdale Pipeline*, 189 Ga. App. 121, 123 (1) (375 SE2d 61) (1988).

[6] *Sea Island Bank*, supra.

2. Southland next contends that the trial court erred in enjoining the construction of condominiums because the zoning and the provisional development plat for the property permit attached dwellings. Southland additionally notes that "cluster housing development" is defined in DeKalb County Ordinance § 27-31 as "a development that permits a reduction in lot area provided there is no increase in overall density of development." Southland thus argues that cluster homes and patio homes reference density requirements of residential development and not the architectural style of the homes therein. Finally, Southland argues that Paragraph 10.08 of the Covenants, which states that all dwellings must be built in compliance with applicable zoning laws, allows for attached housing because such housing is permitted by zoning laws.

These arguments are unpersuasive. The zoning of the property is irrelevant to the instant appeal. Appellees conceded at the hearing that the zoning does not prohibit the construction of attached housing. Rather, the issue at the hearing was whether the Covenants prohibit building condominiums. As we held in Division 1, there was evidence before the trial court to support its interpretation of the Covenants. It follows that this enumeration of error is without merit.

3. Finally, Southland argues that it has the exclusive right to interpret the Covenants pursuant to Paragraph 11.07, which provides:

In all cases, the provisions set forth or provided for in this Declaration shall be construed together and given that interpretation or construction which, in the opinion of the Declarant or the Board of Directors will best effect the intent of the Provisional Development Plan for THE SOUTH-LAND, as the same may be modified by Developer. The provisions hereof shall be liberally interpreted and, if necessary, they shall be so extended or enlarged by implication as to make them fully effective.

Southland contends that this Paragraph reserves to the developer and the Board of Directors the right and power to interpret the Covenants in such a way as to permit Southland to complete the subdivision in accordance with the provisional development plat, which contemplates attached housing. However, this Paragraph does not grant Southland the power to develop the subdivision in a manner contrary to other provisions in the Covenants. "[W]hen a provision specifically addresses the issue in question, it prevails over any

conflicting general language."[7] The specific provisions governing the type of dwelling suitable for residential development in the subdivision prevail over the general power reserved to Southland in Paragraph 11.07. Therefore, this Paragraph provides no basis upon which to overturn the interlocutory injunction.

*Judgment affirmed. Blackburn, P. J., and Barnes, J., concur.*

DECIDED FEBRUARY 23, 2005 —
RECONSIDERATION DENIED MARCH 16, 2005 —

*Simmons & Szczecko, M. T. Simmons, Jr., Joseph Szczecko*, for appellants.

*Balch & Bingham, David J. Marmins*, for appellees.

---

[7] (Citation omitted.) *Woody's Steaks*, supra at 818 (1).