**FIRST DIVISION**
**PHIPPS, C. J.,**
**ELLINGTON, P. J., and BRANCH, J.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**November 20, 2013**

# In the Court of Appeals of Georgia

A13A1651. JONES v. MORRIS et al.                    PH-078

PHIPPS, Chief Judge.

This is an appeal from an interlocutory injunction granted to two residential property owners in a subdivision. The interlocutory injunction prohibited a third property owner from pumping water from a pond in the subdivision pending final adjudication of the underlying petition for declaratory judgment, injunctive relief, and damages. For the reasons that follow, we affirm.

Carla Jones owned residential property in a subdivision. James and Terri Morris (collectively, Morris) also owned residential property in the subdivision. The subdivision contained a roughly two-and-one-half-acre pond, which Jones's lot and Morris's lot abutted.

In June 2012, Jones installed in the pond a pump for the purpose of withdrawing water to irrigate her lawn. Jones operated the pump twice per week; the pump ran for a total of 90 minutes each time, removing water at a maximum rate of approximately 20 gallons per minute. According to Morris, the water level of the pond decreased by about one-and-one-half feet in the month following the installation of the pump, and the water level had not been that low in the 13 preceding years that James Morris had lived there.[1]

Concerned that Jones's withdrawal of water was causing irreparable damage to the pond, several owners of lots which abutted the pond asked Jones to remove the pump and stop pumping water from the pond. Jones did not respond to the request, and in July 2012 Morris filed the underlying action, asserting that Jones was violating the subdivision's protective covenants by pumping water from and draining the pond.

In particular, Morris pointed to Paragraph 29 of the subdivision's Declaration of Protective Covenants (as amended), which included the following provisions:

> *Special Provisions Relating to Lake Lots.* A perpetual, appurtenant easement is hereby granted to the owners of each lot

---

[1] At the interlocutory hearing, James Morris also testified that, after the court issued the temporary restraining order and Jones stopped operating the pump, the water level returned to "about normal," and was "about full pool."

abutting a lake or pond in [the subdivision] over and across that portion of the lake or pond on which such lot abuts up to the usual high water mark thereof for the purpose of permitting each owner thereof and his invitees to boat, swim or fish over the entire surface area of said lake or pond.

No dock, boathouse or any other structure may be constructed on or over the surface of any such lake or pond without the prior written consent of [the subdivision developer] or its designee. No structure other than a small platform dock will be permitted.

No owner of any portion of the dam of any such lake or pond shall take any action to drain the lake or pond, or to modify the dam or other structures supporting the lake or pond without the written consent of at least a majority . . . of all persons owning land abutting said lake or pond.[2]

After issuing an order temporarily restraining Jones from removing any water from the pond, the trial court conducted an evidentiary hearing and, in August 2012, entered an interlocutory order directing Jones to remove the pump and cease pumping water from the pond (until further notice from the court). In the interlocutory order, the court found that Jones's use of the pond was "clearly inconsistent with the

_____

[2] Jones owned no portion of the dam.

3

covenants as a whole." The court pertinently found that Jones's withdrawal of pond water for irrigation purposes violated the intent of the protective covenants, citing those provisions that expressly indicated that the pond would be maintained for the purposes of permitting owners of pond-abutting lots to boat, swim, or fish; that a pump was not a permitted structure on the pond, and that any structure on the pond required approval by specified parties; and that dam owners were prohibited from taking any action to drain the pond.

1. Jones contends that the trial court erred by finding that protective covenants that did not explicitly prohibit her from using the pond to irrigate her property, implicitly prohibited her from doing so. This contention presents no basis for reversal.

> In our review of restrictive covenants, we are mindful that the general rule is that the owner of land has the right to use it for any lawful purpose. Restrictions upon an owner's use of land must be clearly established and must be strictly construed. Moreover, any doubt concerning restrictions on use of land will be construed in favor of the grantee, because restrictions on private property are not favored in Georgia. As such, they will not be enlarged or extended by construction.[3]

---

[3] *Charter Club &c. v. Walker*, 301 Ga. App. 898, 899 (689 SE2d 344) (2011) (punctuation and footnotes omitted).

4

However, when applying this general rule of construction, the court must consider the entire document and not merely the provision in question.[4] As explained by the Supreme Court, "In the construction of an instrument, the whole instrument is to be construed together so as to give effect, if possible, to the entire deed . . . and the construction which will uphold a deed in whole and in every part is to be preferred."[5]

"Restrictive covenants will be construed to carry out the intention of the parties, if that intention can be ascertained from a consideration of the whole instrument."[6] The rule of strict construction of restrictive covenants "does not override the rule that the entire document must be considered when determining the intent of the parties."[7]

The construction, interpretation and legal effect of a restrictive covenant is an issue of law to which the appellate court applies the plain legal error standard of review. Whether [Jones] violated the restrictions

[4] *Shoaf v. Bland*, 208 Ga. 709, 710-11 (2) (69 SE2d 258) (1952).

[5] *Licker v. Harkleroad*, 252 Ga. App. 872, 874 (2) (a) (558 SE2d 31) (2001) (citations omitted).

[6] *Charter Club &c.*, supra at 900; see *Roberts v. Lee*, 289 Ga. App. 714, 716 (1) (658 SE2d 258) (2008); *Licker*, supra at 875 (a trial court erred by strictly construing restrictive covenants without considering the entire document, recognizing that effect is to be given to the intention of the parties as shown by the language of the whole instrument, considered with the object of the parties in making the restrictions).

[7] *Licker*, supra at 874 (2).

5

on the use of [her] property as contained in the restrictive covenants involved both questions of law and fact and can only be overturned in the event of manifest abuse of discretion.[8]

The trial court concluded that Jones's use of the subdivision pond (pumping water therefrom to irrigate her own property) was inconsistent with the protective covenants. In making its determination, the trial court properly considered the intent underlying the covenants, as reflected by the instrument as a whole.[9]

Although Jones claims that the protective covenants permitted lot owners to pump water from the subdivision pond to irrigate their lawns, that interpretation is not reasonable; under the facts of this case, it would render meaningless other provisions (e.g., that the pond was maintained for the purpose of boating, swimming or fishing, and owners of the pond's dam were prohibited from taking any action to drain the pond).[10] Notably, Jones's conduct in pumping water from the community pond to

---

[8] *Roberts*, supra at 714 (citations and punctuation omitted).

[9] Id. at 716 (1).

[10] See *Elite Realty Serv. v. City of Auburn*, 272 Ga. 195, 197 (528 SE2d 236) (2000) (restrictive covenant should be construed so as to give a reasonable, lawful and effective meaning to all manifestations of intention by the parties rather than an interpretation which leaves a part of such manifestations unreasonable or of no effect).

6

irrigate her own land was not merely a property owner's use of her own land; it was, instead, a use of a community pond by one property owner (holding an easement to use the pond) which was incompatible with the rights of similarly-situated property owners.

This court has recognized that, historically, restrictive covenants have been used to assure uniformity of development and use of a residential area to give the owners of lots within such an area some degree of environmental stability.[11] We note that Jones's reliance on cases decided as a matter of riparian ownership (common law) rights, as opposed to contract law, is misplaced, given that this case involves a planned community with recorded rights to and restrictions on the use of the pond.[12]

Thus, the trial court did not err by interpreting the protective covenants as prohibiting Jones from pumping water from the pond to irrigate her property, or abuse

---

[11] *Licker*, supra at 877 (2) (c).

[12] See *Stewart v. Bridges*, 249 Ga. 626-627 (292 SE2d 702) (1982) (in deciding land owner's right to use lake waters for irrigation, the Court applied Georgia's water rights law (common law) as opposed to contract law, because the case "[did] not involve a planned community or recreational development with recorded rights to and restrictions on the use of the lake"); *Tunison v. Harper*, 286 Ga. 687, 688 (1) (690 SE2d 819) (2010) (deciding parties' riparian or common law rights to use a pond, and noting that case did not involve a planned community with recorded rights to and restrictions on the use of water; the parties' rights in the case were not grounded in written contracts to be construed by the court).

its discretion by concluding that such use violated the covenants.[13] Under the circumstances, we need not reach Jones's argument that the court erred by finding that the pump and pump-line assembly constituted an unauthorized "structure" as defined by the covenants.

2. Jones contends that the trial court erred by enjoining her from making lawful use of her property, and that Morris presented no evidence that by pumping water from the subdivision pond, Jones caused the pond's water level to drop. However, Morris presented testimonial and photographic evidence that Jones's act of pumping water from the pond to irrigate her lawn lowered the water level.

"An interlocutory injunction may be issued to maintain the status quo if, after balancing the relative equities of the parties, it appears the equities favor the party seeking the injunction."[14]

> Georgia law places the granting and continuing of injunctions within the sound discretion of the judge.[15] In order to hold that the trial judge abused his discretion in granting this interlocutory injunction, we

---

[13] See *Roberts*, supra at 717 (2).

[14] *Bernocchi v. Forcucci*, 279 Ga. 460, 461 (1) (614 SE2d 775) (2005) (citations and punctuation omitted).

[15] OCGA § 9-5-8 (former Code Ann. § 55-108).

would have to find that there was no evidence on which he based his ruling.[16]

There being some evidence on which the trial court based its ruling, no abuse of discretion has been shown.[17]

*Judgment affirmed. Ellington, P. J., concurs; Branch, J. concurs in judgment only.*

---

[16] *Sea Island Bank v. First Bulloch Bank &c.*, 245 Ga. 715, 716 (1) (267 SE2d 12) (1980); see *Bernocchi*, supra; see *Southland Dev. Corp. v. Battle*, 272 Ga. App. 211, 213 (612 SE2d 12) (2005).

[17] See generally *Southland Dev. Corp.*, supra at 214 (1).