09-4907-cv
Rabin v. Mony Life Ins. Co.

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 21st day of July, two thousand ten.

PRESENT:  REENA RAGGI,
    GERARD E. LYNCH,
    DENNY CHIN,
      *Circuit Judges.*

-----------------------------------------------------------------------

I. STEPHEN RABIN,

      *Plaintiff-Appellant,*

    v.             No. 09-4907-cv

MONY LIFE INSURANCE COMPANY,

      *Defendant-Appellee.*

-----------------------------------------------------------------------

APPEARING FOR APPELLANT:  RAYMOND A. BRAGAR (Jeffrey H. Squire, Bragar Wexler Eagel & Squire, P.C., New York, New York, Kenneth A. Elan, New York, New York, *on the brief*), Bragar Wexler Eagel & Squire, P.C., New York, New York.

APPEARING FOR APPELLEE:  VIRGINIA A. SEITZ (Thaila K. Sundaresan, Sidley Austin LLP, Washington, D.C., Joel S. Feldman, Gerald L. Angst, Sidley Austin LLP,

Chicago, Illinois, *on the brief*), Sidley Austin LLP, Washington, D.C.

Appeal from the United States District Court for the Southern District of New York (Laura Taylor Swain, *Judge*).

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the judgment of the district court entered on November 24, 2009, is AFFIRMED.

Plaintiff I. Stephen Rabin appeals from a judgment of the district court dismissing his state law contract and tort claims brought against MONY Life Insurance Company ("MONY") pursuant to Fed. R. Civ. P. 12(b)(6) and 56. We review such rulings de novo. See Holmes v. Grubman, 568 F.3d 329, 335 (2d Cir. 2009); Havey v. Homebound Mortgage, Inc., 547 F.3d 158, 163 (2d Cir. 2008). While we will not uphold an award of summary judgment in favor of MONY if the evidence is sufficient to permit a reasonable jury to find for Rabin, he must point to more than a "scintilla" of evidence in support of his claim to defeat summary judgment. Havey v. Homebound Mortgage, Inc., 547 F.3d at 163 (internal quotation marks omitted); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). In applying these principles to this appeal, we assume the parties' familiarity with the facts and the record of prior proceedings, which we reference only as necessary to explain our decision to affirm.

1.      Breach of Contract

Rabin submits that MONY breached the terms of the whole life insurance policies here at issue by failing (1) to make payment of surrender proceeds by check, and (2) to award a competitive interest rate on such proceeds following their placement in a MONY Market Account.  The claims fail as a matter of law.

a.      Form of Payment

To support his claim that MONY was required to disburse surrender proceeds by check, Rabin points to the policies' use of the words "pay" and "payable."  Even assuming – as Rabin contends – that the plain meaning of these words contemplates payment by cash or check, we would nevertheless conclude that MONY is entitled to summary judgment.  The policies use the terms cited by Rabin with respect to death benefits: MONY "WILL PAY to the Beneficiary the Face Amount and any other proceeds payable by reason of the death of the Insured upon receipt of due proof of such death, subject to the provisions on the following pages of this Policy."  Jan. 1, 1977 Policy at 1; see id. ("This is a WHOLE LIFE POLICY.  Insurance is payable in event of death."); accord Jan. 1, 1979 Policy at 1.  No such language appears with respect to surrender proceeds.  Instead, the policies simply state that they "may be surrendered at any time for [their] cash value less any indebtedness."  Jan. 1, 1977 Policy at 5; accord Jan. 1, 1979 Policy at 5.  Although the word "payment" does appear in at least one instance in the context of surrender proceeds, the term does not convey the meaning Rabin asserts.  Accordingly, insofar as Rabin asserts that MONY's obligation to pay

3

proceeds by check stems from the policies' use of terms derived from the word "pay," no rational factfinder could conclude that such an obligation pertains to the payment of surrender proceeds.

Further, the policies expressly authorize MONY's settlement of surrender proceeds by methods other than single lump-sum payments – including methods not detailed in the contract. See Jan. 1, 1977 Policy at 8 (stating that "[i]nstead of being paid in one sum[,] any death or surrender proceeds of at least $1,000 payable under this Policy to a natural person in his own right may be settled under one of the following options," including "any other option that may be agreed to by [MONY]"); accord Jan. 1, 1979 Policy at 8. Thus, no rational trier of fact could find that MONY was contractually obligated to disburse surrender proceeds by check.

In any event, because MONY's use of interest-bearing checking accounts permitted Rabin to liquidate his proceeds at any time by writing himself a check for the full account balance, this disbursement method was not sufficiently different from payment by check to permit a jury to find a material breach.[1]

---

[1] Rabin relies heavily on the First Circuit's decision in Mogel v. UNUM Life Insurance Co. of America, 547 F.3d 23 (1st Cir. 2008). This reliance is misplaced. In Mogel, the First Circuit determined that plaintiff life insurance beneficiaries had a viable claim for breach of fiduciary duty under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 et seq., where defendant UNUM Life Insurance Company attempted to fulfill its obligation to pay "one lump sum" by establishing "Security Accounts" for plan beneficiaries that could be drawn down by beneficiaries writing checks to themselves. Id. at 24-25. The First Circuit's ERISA analysis is irrelevant to the facts at

4

b.      Interest Rates

Equally unavailing is Rabin's contention that MONY breached its obligation to pay a competitive rate of interest on proceeds placed in MONY Market Accounts when it paid him 0.75% interest rather than the 8.3% paid to non-policyholder creditors. In exercising his right to surrender his life insurance policies for their cash value, Rabin completed a Full or Part Surrender Request Form, which stated that "[t]he funds in the [interest-bearing checking account through which proceeds would be paid] earn[ed] interest at a competitive, variable rate." Dec. 21, 2004 Full or Part Surrender Request Form at 2. A MONY Market Account brochure accompanying the packet Rabin received once his surrender request had been processed advised him that the interest rate applied to the account "[was] a competitive rate and w[ould] always equal or exceed the national average for bank money market deposit accounts, as measured by the Bank Rate Monitor National Index [("BRMNI")]." The MONY Market Account at 3. The confirmation certificate included in the packet identified Rabin's opening balance as $142,733.13 and his current interest rate as 0.75%. See Confirmation Certificate at 1.

Rabin does not dispute that at all relevant times the interest MONY paid was equal to or greater than the BRMNI. Nevertheless, he asserts that MONY's obligation to pay a "competitive rate" exists independently of its obligation to ensure that such a rate equals or

_____

hand. Further, the life insurance policy in Mogel explicitly called for a "lump sum" payment, whereas the contract here at issue explicitly authorizes MONY to agree to non-lump-sum payments.

exceeds the BRMNI. Such a claim fails as a matter of law in the absence of evidence that the BRMNI failed to represent a competitive rate of return for his highly liquid cash investment. At the time he received documentation of his account, Rabin was not only advised of the specific rate at which the funds therein would accrue interest, but was also free to move those funds to any investment he wished. Further, as the district court observed, MONY's representation that it would pay a "competitive rate" was preliminary to its more specific identification of that rate by reference to the BRMNI. See John Hancock Mut. Life Ins. Co. v. Carolina Power & Light Co., 717 F.2d 664, 669 n.8 (2d Cir. 1983) (observing that "definitive, particularized contract language takes precedence over expressions of intent that are general, summary, or preliminary"); see generally Aramony v. United Way of Am., 254 F.3d 403, 414 (2d Cir. 2001) (noting that "specific words will limit the meaning of general words if it appears from the whole agreement that the parties' purpose was directed solely toward the matter to which the specific words or clause relate" (internal quotation marks omitted)). For these reasons, no reasonable factfinder could conclude that, having paid interest at a rate equal to or exceeding the BRMNI, MONY nevertheless breached its obligation to pay interest at a "competitive rate."

2. Fraud

Rabin challenges the Rule 12(b)(6) dismissal of his fraud claim, arguing that "the same facts can give rise to claims for both breach of contract and fraud and deceit under New York law." Appellant's Br. at 52. We are not persuaded.

6

The amended class action complaint here at issue alleges that MONY is liable for fraud because it represented that funds in the MONY Market Account would accrue interest at a "competitive" rate but "knew [at the time it made the representations] that they were not true." Am. Compl. ¶¶ 37-38. Because the complaint does not allege that MONY made any false representations collateral to the contract, much less that such representations induced Rabin to enter into the contract, "[t]he alleged false representations are the essential terms of the . . . contract[ and] . . . failure by [MONY] to honor these terms gives rise to an action for breach of contract, not one in tort." Wegman v. Dairylea Coop., Inc., 50 A.D.2d 108, 113, 376 N.Y.S.2d 728, 734 (4th Dep't 1975) (first alteration in original); see also Telecom Int'l Am., Ltd. v. AT&T Corp., 280 F.3d 175, 196 (2d Cir. 2001) ("[W]here a fraud claim arises out of the same facts as plaintiff's breach of contract claim, with the addition only of an allegation that defendant never intended to perform the precise promises spelled out in the contract between the parties, the fraud claim is redundant and plaintiff's sole remedy is for breach of contract."); Ross v. DeLorenzo, 28 A.D.3d 631, 636, 813 N.Y.S.2d 756, 760-61 (2d Dep't 2006) ("[M]ere misrepresentation of an intention to perform under [a] contract is insufficient to allege fraud. . . . Conversely, a misrepresentation of material fact, which is collateral to the contract and serves as an inducement for the contract, is sufficient to sustain a cause of action alleging fraud." (ellipsis in original; internal quotation marks omitted)).

The cases cited by Rabin are inapposite, as they pertain to collateral representations. See, e.g., Deerfield Commc'ns Corp. v. Chesebrough-Ponds, Inc., 68 N.Y.2d 954, 956 (1986)

(concluding that fraudulent inducement counterclaim was not duplicative of breach of contract counterclaim where "[i]t alleged . . . a representation of present fact, not of future intent[,] collateral to, but which was the inducement for[,] the contract" (internal quotation marks and citation omitted)); Sabo v. Delman, 3 N.Y.2d 155, 159-60 (1957) (concluding that promise extraneous to written contract could, "if . . . actually made with a preconceived and undisclosed intention of not performing it, . . . constitute[] a misrepresentation of a material existing fact upon which an action for rescission may be predicated" (internal quotation marks omitted)). Accordingly, the district court properly concluded that Rabin's complaint failed to state a claim for fraud.

3.      Deceptive Acts or Practices

Rabin contends that the district court erred in awarding summary judgment on his deceptive acts or practices claim because (1) MONY's use of the name "MONY Market Account" and the assertion that funds held in such an account would accrue interest at a rate equal to or exceeding the BRMNI suggested that the account was similar to a money market account; (2) MONY's representation that surrender proceeds would "be placed in an interest bearing checking account" opened in the policyholder's name led policyholders to believe that funds were deposited into a separate account, not retained by MONY for its own use; and (3) MONY's assertion that funds in the MONY Market Account were "payable through State Street Bank and Trust Company" and subject to the "banking rules and regulations of [that] Bank" suggested that funds had been deposited into a money market account at State

8

Street Bank. Appellant's Br. at 42-43 (emphases and internal quotation marks omitted). These arguments lack merit.

To demonstrate deceptive acts or practices in violation of N.Y. Gen. Bus. Law § 349, Rabin was required to show not only that MONY's acts or practices were "misleading in a material way," but also that he was injured as a result. Cohen v. JP Morgan Chase & Co., 498 F.3d 111, 126 (2d Cir. 2007). Here, MONY provided Rabin with a brochure and confirmation certificate that advised him not only of his right to liquidate his account by writing a check for the entire balance, but also of the specific rate at which the funds in his account would accrue interest should he choose not to exercise that right. On this record, no rational factfinder could conclude that MONY's decision to name the account a "MONY Market Account" was materially misleading, much less that Rabin suffered any injury as a result of his alleged belief that the account was equivalent to a money market account.

No different conclusion is warranted with respect to Rabin's assertion that MONY misled him into believing that his surrender proceeds would be placed in an account opened in his name. MONY acknowledged Rabin's entitlement to such proceeds and, upon request, remitted the full amount of the proceeds plus interest. Rabin cites no authority – and we are aware of none – requiring that banks or other financial institutions physically segregate customers' funds in order to establish individual accounts. In these circumstances, we identify no materially misleading act or practice sufficient to permit a rational trier of fact to find in Rabin's favor on his deceptive acts or practices claim, much less any ensuing injury.

Finally, assuming that the representation that funds held in MONY Market Accounts were "payable through State Street Bank and Trust Company" would have led a reasonable policyholder in Rabin's circumstances to conclude that his funds were on deposit in a money market account at that bank, Rabin identifies no injury attributable to this representation. While he asserts that "[b]ank money market accounts are FDIC insured," whereas MONY Market Accounts are not, Appellant's Br. at 44 & n.34, he does not demonstrate any loss on account of the lack of such insurance.

For the foregoing reasons, we affirm the award of summary judgment with respect to Rabin's deceptive acts or practices claim.

4.     Unjust Enrichment

Under New York law, "[t]he notion of unjust enrichment applies where there is no contract between the parties." Maryland Cas. Co. v. W.R. Grace & Co., 218 F.3d 204, 212 (2d Cir. 2000).  Because Rabin and MONY executed a valid and enforceable contract and because the subject matter here at issue – namely MONY's method of disbursing surrender proceeds and the rate at which it pays interest thereon – is governed by that contract, Rabin has no cognizable claim for unjust enrichment separate from his breach of contract claim. See IDT Corp. v. Morgan Stanley Dean Witter & Co., 12 N.Y.3d 132, 142 (2009) ("Where the parties executed a valid and enforceable written contract governing a particular subject matter, recovery on a theory of unjust enrichment for events arising out of that subject matter is ordinarily precluded."); Hoeffner v. Orrick, Herrington & Sutcliffe LLP, 61 A.D.3d 614, 615, 878 N.Y.S.2d 717, 718 (1st Dep't 2009) (dismissing plaintiff's unjust enrichment claim

10

as "duplicative of his breach of contract claim, since he allege[d] no duty owed him by defendants independent of the contract"). Thus, summary judgment was properly entered in favor of MONY on Rabin's unjust enrichment claim.

5.     Breach of Fiduciary Duty

Rabin submits that the district court erred in awarding MONY summary judgment on his breach of fiduciary duty claim. We disagree.

"[A]n insurance company does not owe its policyholder a common-law fiduciary duty except when it is called upon to defend its insured . . . ." Fiala v. Metro. Life Ins. Co., 6 A.D.3d 320, 322, 776 N.Y.S.2d 29, 32 (1st Dep't 2004); accord Uhlman v. N.Y. Life Ins. Co., 109 N.Y. 421, 429-30 (1888); Rabouin v. Metro. Life Ins. Co., 182 Misc. 2d 632, 634, 699 N.Y.S.2d 655, 656-57 (N.Y. Sup. Ct. 1999), aff'd, 282 A.D.2d 381, 723 N.Y.S.2d 651 (1st Dep't 2001). Accordingly, absent special circumstances, MONY owed Rabin no fiduciary duty. MONY never represented that it would invest any funds in the MONY Market Account for Rabin's benefit. To the contrary, it identified the Account as an interest-bearing vehicle that would give Rabin "all the time [he] need[ed] to decide how to use, or invest, [his] proceeds while preserving [his] rights to elect other methods of policy settlement." The MONY Market Account at 2 (emphases added). As Rabin has adduced no evidence sufficient to permit a rational factfinder to conclude that MONY exercised investment discretion on his behalf,[2] the district court properly concluded that his relationship

---

[2] Rabin argues that the district court erroneously overlooked the fact that, rather than placing his surrender proceeds in an interest-bearing account opened in his name, MONY retained the proceeds and invested them in itself. This argument is a variation of Rabin's

11

with MONY was not fiduciary in nature.  See, e.g., Ascot Fund Ltd. v. UBS PaineWebber, Inc., 28 A.D.3d 313, 314, 814 N.Y.S.2d 36, 36 (1st Dep't 2006) (holding that broker owed no fiduciary duty to purchaser of securities where there was no evidence that broker either possessed "discretionary trading authority" or gave purchaser investment advice); Backer v. Schenectady Trust Co., 216 A.D.2d 712, 712-14, 628 N.Y.S.2d 197, 198-99 (3d Dep't 1995) (concluding that trust company's purchase of "allegedly unsound and speculative utility company stocks" on behalf of decedent did not give rise to fiduciary relationship where trust company did not exercise investment discretion but was instead authorized to purchase securities and investments only "in such manner as [decedent] shall from time to time direct" (alteration in original)).

No different conclusion is compelled by New York Insurance Law § 2120, which states that "[e]very insurance agent and every insurance broker acting as such in this state shall be responsible in a fiduciary capacity for all funds received or collected as insurance agent or insurance broker, and shall not, without the express consent of his or its principal, mingle any such funds with his or its own funds or with funds held by him or it in any other capacity."  That provision imposes on insurance brokers and agents "a duty not to commingle funds [they] receive[] for transmission to an insurance company and . . . a duty to keep [such funds] separate and distinct from [their] own property and promptly to transmit the[ funds] to the insurance company."  K. Bell & Assocs. v. Lloyd's Underwriters, 97 F.3d 632, 638 (2d

challenge to MONY's failure physically to segregate his funds from those of the institution. For the reasons already discussed, the argument lacks merit.

Cir. 1996) (third alteration in original; emphases added; internal quotation marks omitted). As Rabin cites no authority dictating otherwise, we identify no basis for concluding that § 2120 imposes a similar duty on insurance companies themselves. Rabin's contention that MONY breached fiduciary obligations owed under § 2120 by commingling his funds with its own is therefore unavailing.

In light of the foregoing, the district court properly awarded MONY summary judgment on Rabin's breach of fiduciary duty claim.

6.    Conclusion

We have considered Rabin's remaining arguments on appeal and conclude that they are without merit. Accordingly, the November 24, 2009 judgment of the district court is AFFIRMED.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, Clerk of Court