**Anne T. GARRISON, on behalf of herself and all others similarly situated, Plaintiff,**

v.

**JACKSON NATIONAL LIFE INSURANCE COMPANY, Defendant.**

**Civil Action No. 2:11–CV–00327–WCO.**

United States District Court,
N.D. Georgia,
Gainesville Division.

July 23, 2012.

John W. Oxendine, John Oxendine, P.C., Atlanta, GA, Michael Jordan Lober, Lober, Dobson & Desai, Sheetal R. Desai, Business & Government Law Group A Lober, Dobson & Desai, LLC, Roswell, GA, William Gregory Dobson, William Gregory Dobson, PC, Macon, GA, for Plaintiff.

Eric S. Mattson, Joel S. Feldman, Lisa E. Schwartz, Sidley Austin LLP, Chicago, IL, H. Sanders Carter, Jr., Smith Moore Leatherwood, LLP, Aaron Edward Pohlmann, Atlanta, GA, for Defendant.

## *ORDER*

WILLIAM C. O'KELLEY, Senior District Judge.

The captioned case is before the court for consideration of defendant's "Motion to Dismiss" [4].

### I. Procedural History

On December 20, 2011, plaintiff filed this class action under the Class Action Fairness Act of 2005 ("CAFA"), Pub.L. No. 109–2, 119 Stat. 4 (codified in various parts of 28 U.S.C., including § 1332(d)). CAFA grants a federal district court original jurisdiction over a "class action" if: (1) the amount in controversy exceeds $5,000,000, exclusive of interest and costs, 28 U.S.C. § 1332(d)(2); (2) at least one plaintiff is diverse from one defendant, *id.* § 1332(d)(2)(A); and (3) several jurisdictional exceptions do not apply, *see id.* §§ 1332(d)(3), (d)(4), and (d)(9). The complaint asserts that these prerequisites are met.[1]

After executing a waiver of service, defendant filed this motion to dismiss on February 21, 2012. Later, on April 18,

---

1. Specifically, the complaint alleges that: (1) over $5,000,000 is in controversy; (2) there is minimum diversity because plaintiff is a citizen of Georgia and defendant is a Michigan corporation; and (3) most of the class members are citizens of a different state than defendant. The last allegation is relevant to 28 U.S.C. § 1332(d)(3), which allows a court to decline CAFA jurisdiction where greater than one-third but less than two-thirds of the proposed plaintiffs are citizens of the state in which the action was originally filed. *See* 28 U.S.C. § 1332(d)(3)(A)-(E). Based on the facts pleaded, none of the exceptions to jurisdiction in § 1332(d)(4) or § 1332(d)(9) are applicable.

2012, the court held a scheduling conference addressing the parties' Joint Preliminary Report and Discovery Plan. After the conference, on April 23, 2012, plaintiff filed an amended class-action complaint with defendant's consent.[2] The amended complaint is the operative pleading and defendant's motion to dismiss will be evaluated with reference to that complaint.

## II. Factual Background

Defendant Jackson National Life ("Jackson Life") is a life insurance company. In 1994, Dr. Thomas P. Garrison, Jr. purchased a life insurance policy (policy number 0023239410) with an accidental death benefit of $100,000 from Jackson Life. On February 22, 2006, Dr. Garrison died. His wife, Anne T. Garrison, was the policy's sole beneficiary.

The policy required Jackson Life to pay the policy proceeds "to the designated [b]eneficiary upon due proof of the death of the [i]nsured and not later than two months after receipt of such proof." (Policy 6.)[3] "Any amount payable at death" would be paid by Jackson Life "in one sum unless otherwise agreed." (*Id.* at 8.) If the proceeds exceeded $2,000, a beneficiary could also elect one of three other payment options "[i]n lieu of a single sum payment." (*Id.*) These three options were: (1) leaving the policy proceeds "on deposit [with Jackson Life] during the lifetime of the payee or for a specified period," with Jackson Life paying at least 4% annual interest on the deposit, (*id.*); (2) receiving monthly payments of the proceeds plus interest

until the proceeds were paid in full, (*id.*); or (3) receiving monthly payments for life, (*id.*). The policy's provisions could only be changed in writing by Jackson Life's president, vice president, secretary, or assistant secretary. (*Id.* at 6.)

Shortly after Dr. Garrison's death, plaintiff received a claim form from Jackson Life. The claim form explained that:

> Distribution of policy proceeds is made in a lump sum unless you choose another option provided under the contract. If your portion of the proceeds is $5,000.00 or greater, Jackson National Life (JNL) will set up a Beneficiary Access Account in your name from which you may write drafts to access your money. The life insurance proceeds will remain a[sic] JNL investment account which allows JNL to pay you a competitive interest rate while you decide how to spend the proceeds. The account is not FDIC–Insured. Checks will be issued to corporations, partnerships, trusts, estates, or minors.

(Am. Compl. 6.) On the claim form, plaintiff circled the words "in a lump sum" and wrote the following sentence: "Please send single check." (*Id.*)

Jackson Life did not send a check to plaintiff. Instead, plaintiff alleges that Jackson Life created a Beneficiary Access Account ("beneficiary account") and placed her policy proceeds in this account. She was advised of the creation of the beneficiary account by a letter dated May 17, 2006. Several days after plaintiff received this letter, a "checkbook"[4] arrived. This

---

2. At the scheduling conference and in a motion filed with the amended complaint, plaintiff noted that defendant had consented to amendments involving formatting, grammar, and corrections to count four. In the motion, plaintiff also sought leave to alter count one of the complaint. The court granted this request.

3. The proceeds included the sum of the face amount of the policy, any additional benefit riders, and any premiums paid beyond the current payment period, less the sum of any policy loan or loan interest due and unpaid at the date of death and the portion of any unpaid premium due prior to the insured's death. (Policy 6.)

4. The court refers to this "checkbook" in

"checkbook" contained drafts that plaintiff could use to request money from the beneficiary account.

Plaintiff attached a copy of this May 17 letter to the complaint. In the letter, Jackson Life claimed to have placed the proceeds into an interest-bearing beneficiary account. (*See* May 17, 2006 Letter 3 ("When we approved your claim, we immediately placed the proceeds into this account.").) The letter described the "book of personalized checks" provided with the account, which could be used just "as you would [with] any other checking account, except that each check must be for at least $250." (*Id.*) The full proceeds could be withdrawn by "writ[ing] a check for that amount." (*Id.*) There were no service or maintenance fees, although there were charges "for special situations, such as overdrawing your account, stopping payment on a check, or if you request a copy of a cancelled check." (*Id.*)

According to the complaint, the beneficiary account was not actually a checking account, because "the policy proceeds were retained for the exclusive benefit and control of and by Jackson Life until the [p]laintiff drew a draft on the 'checking account.'" (Am. Compl. 6.) In other words, Jackson Life did not place the proceeds in a separate bank account that could be accessed solely by the beneficiary. Moreover, the "checks" issued by Jackson Life are allegedly not checks, but drafts that differ from a check in several material ways: (1) the beneficiary is not protected from a forged draft in the same manner as a forged check; (2) a draft is not a promise to pay and thus, a beneficiary account "is nothing more than an IOU from an insurance company"; and (3) some creditors and banks treat drafts and checks differently and thus the drafts are not as "freely negotiable as a check...." (*Id.* at 11.)

In count one, plaintiff claims that Jackson Life breached the policy by creating the beneficiary account instead of paying the proceeds directly to her. As a result, she "received less interest than guaranteed and/or did not receive an immediate lump sum payment." (Am. Compl. 16.) Since the only option in the policy that allowed Jackson Life to retain the policy proceeds on deposit (Option 1) also required Jackson Life to pay at least 4% annual interest on the proceeds, (*see* Policy 8), and since the beneficiary account only provided 3.75% annual interest, plaintiff claimed that the she was "entitled to recover the interest differential between 4% and the amount of interest she actually recovered," (Am. Compl. 16.) Count two alleges that Jackson Life breached the contractual covenant of good faith and fair dealing. Count three alleges that Jackson Life was unjustly enriched by retaining the policy proceeds. Count four alleges that Jackson Life did not pay the statutorily-required interest rate on the proceeds. Defendant moves to dismiss the entire complaint.

### III. Motion to Dismiss Standard

The Federal Rules of Civil Procedure require that a complaint contain "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (quoting *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868

quotes because, as explained later, it allegedly does not contain actual checks.

(2009) (internal quotation marks omitted). Plausible does not mean probable, but a complaint must do "more than [raise] a sheer possibility that a defendant has acted unlawfully." *Id.* To establish a plausible claim, the complaint must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* When a complaint only "pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal quotation marks omitted).

"Detailed factual allegations" are not necessary, but a plaintiff must furnish more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Id.* Factual allegations are entitled to a presumption of truth. Legal conclusions or "a legal conclusion couched as a factual allegation" are not. *Id.*

A court considering a motion to dismiss takes a "two-pronged approach." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir.2010). First, the court "eliminate[s] any allegations in the complaint that are merely legal conclusions." *Id.* Second, "where there are well-pleaded factual allegations, [the court] assume[s] their veracity and then determine[s] whether they plausibly give rise to an entitlement to relief." *Id.* (internal quotation marks omitted). A complaint should be dismissed under Federal Rule of Civil Procedure 12(b)(6) only if these well-pleaded factual allegations fail to state a plausible claim for relief. *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955.[5]

## IV. Count One: Breach of Contract

Jackson Life argues that the breach of contract claim in count one fails as a matter of law because the creation of the beneficiary account constituted payment of the proceeds to plaintiff. Since the policy does not "provide that 'one sum' may be paid only by check sent directly to the policy's beneficiary," Jackson Life contends that the "deposit" of one sum "into an account from which the beneficiary may immediately withdraw the entire amount" constitutes payment. (Def.'s Br. in Supp. 6.) This contention hinges on an interpretation of the policy's language.

 That language must be construed according to Georgia law.[6] "In Georgia, ordinary rules of contract construction govern the interpretation of insurance policies." *Bituminous Cas. Corp. v. Advanced Adhesive Tech., Inc.*, 73 F.3d 335, 337 (11th Cir.1996). Interpretation begins "with the text of the contract itself." *Reed v. Auto-Owners Ins. Co.*, 284 Ga. 286, 667 S.E.2d 90, 92 (2008). "Where the contractual language unambiguously governs the factual scenario before the court, the court's job is simply to apply the terms of the contract as written, regardless of whether doing so benefits the carrier or

---

5. Exhibits attached to the complaint are treated as "part of the pleading" for purposes of a motion to dismiss. *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1205 (11th Cir.2007). Therefore, the attachments to the complaint, namely the policy and the May 17, 2006 letter, may be considered without converting this motion to dismiss into a motion for summary judgment.

6. In a diversity case, the choice-of-law rules of the forum state are applied to determine the law used to interpret a contract. "Under Georgia choice-of-law rules, interpretation of insurance contracts is governed by the law of the place of making." *Am. Family Life Assur. Co. v. United States Fire Co.*, 885 F.2d 826, 830 (11th Cir.1989). "Insurance contracts are considered made at the place where the contract is delivered." *Id.* The contract in this case was delivered in Georgia, so Georgia law governs its interpretation.

the insured." *Id.* In other words, "unambiguous terms in an insurance policy require no construction, and their plain meaning will be given effect. . . ." *Payne v. Twiggs Cnty. School Dist.,* 269 Ga. 361, 496 S.E.2d 690, 691–92 (1998). But, "when a policy is ambiguous, or is capable of two reasonable interpretations, it is construed in the light most favorable to the insured and against the insurer." *Giddens v. Equitable Life Assurance Soc'y,* 445 F.3d 1286, 1297 (11th Cir.2006) (applying Georgia law).

The policy states that Jackson Life will pay the proceeds to the beneficiary no more than two months after it receives proof of the insured's death. (Policy 6.) Unless otherwise agreed, this payment will be "in one sum. . . ." (*Id.* at 8.) Although the policy provided three other payment options, these options had to be elected by either the insured or the beneficiary. There is no indication that any such election was made. Instead, when Jackson Life sent plaintiff a claim form, plaintiff circled the words "lump sum" and wrote that she would like to receive a single check. Thus, the operative payment option was payment in one sum.

The question in this case is whether Jackson Life's creation of the beneficiary account constituted payment of the policy proceeds in one sum.[7] This is a question of first impression in this circuit, although other federal courts have addressed it. In *Mogel v. Unum Life Insurance Co.,* 547 F.3d 23 (1st Cir.2008), the First Circuit found that an insurer's creation of beneficiary accounts (called Security Accounts)[8] did not constitute payment of policy proceeds to the beneficiaries. The plaintiffs in *Mogel* were the beneficiaries of life insurance policies which provided that, "[u]nless otherwise elected," policy proceeds would be paid "in one lump sum." *Id.* at 25 (alteration original). When the plaintiffs submitted their claims of loss, the defendant insurer approved the claims, placed the policy proceeds in a beneficiary account, and mailed the plaintiffs a checkbook which they could use to access the account. The plaintiffs sued, claiming that the insurer breached its ERISA fiduciary duty when it placed the proceeds in the beneficiary accounts instead of paying a lump sum.

The First Circuit rejected the insurer's contention that the proceeds were "paid" when they were deposited into the beneficiary account because the beneficiaries then had "full power to use the funds as they saw fit." *Id.* at 26. As long as the insurer, rather than the beneficiary, retained "possession of [the proceeds] and enjoyed their use," payment had not been made. *Id.*[9] And, "[u]ntil a beneficiary

---

7. The *creation* of the beneficiary account, which includes the delivery of the account's accompanying "checkbook," is the critical date. Jackson Life contended that the creation of the beneficiary account—not the withdrawal of the proceeds from that account—constituted payment in one sum. (*See* Def.'s Br. in Supp. 6 (contending that defendant paid plaintiff "by establishing plaintiff's Beneficiary Access Account.").) Indeed, defendant admitted that it calculated the statutory interest using the date of the *creation* of the beneficiary account as the date of payment. (*Id.* at 13.)

8. These Security Accounts were identical in all material respects to the beneficiary accounts created by Jackson Life.

9. In a brief footnote, defendant characterizes as dicta the First Circuit's statement that the insurer's creation of the beneficiary account did not constitute payment of the proceeds. (Def.'s Br. in Supp. 7 n. 2.) "[D]icta is defined as those portions of an opinion that are not necessary to deciding the case then before [the court], whereas holding is comprised both of the result of the case and those portions of the opinion necessary to that result by which [the court is] bound." *Powell v. Thomas,* 643 F.3d 1300, 1304–05 (11th Cir.2011) (per curiam) (quotation marks omitted). While making the statement that placing proceeds in a beneficiary account did not constitute payment of the policy proceeds, the First Circuit was answering this question: "wheth-

draws a check on the [beneficiary account]," the insurer "had the use of the funds for its own benefit." *Id.* Thus, the First Circuit concluded that the creation of a beneficiary account did not constitute payment because the account did not deliver possession of the proceeds to the beneficiary. Several other courts confronting the same facts have adopted similar reasoning. *See Lucey v. Prudential Ins. Co.,* 783 F.Supp.2d 207, 212 (D.Mass.2011) ("A lump-sum payment by check (which actually transfers the funds to the beneficiary) is simply not the same as a lump-sum payment by checkbook (which allows the insurance company to retain the funds and earn interest on them)."); *Keife v. Metro. Life Ins. Co.,* 797 F.Supp.2d 1072, 1077 (D.Nev.2011) (finding that the insurer "did not make an immediate payment of the benefits because [the insurer] maintained possession and control of the funds while they were in the [beneficiary account]" and "[u]ntil [the beneficiary] draws on the [beneficiary] account, the funds represented by the checkbook are not in [the beneficiary's] possession.").

■ The policy in this case, like the policy in *Mogel,* required Jackson Life to "pay the [f]ace [a]mount," of the policy "to the designated [b]eneficiary," (Policy 6),

"in one sum . . .," (*id.* at 8.) The plain meaning of payment is "[p]erformance of an obligation, usu[ally] by the delivery of money. Performance may occur by delivery and acceptance of things other than money, but there is a payment only if money or other valuable things are given and accepted in partial or full discharge of an obligation." Black's Law Dictionary, 1150 (7th ed. 1999). A "sum" means "[a] quantity of money." *Id.* at 1449.[10] Since the creation of the beneficiary account did not deliver a quantity of money to the beneficiary or discharge Jackson Life's obligation to deliver a quantity of money to the beneficiary, the complaint adequately alleges that Jackson Life breached the policy's terms.

The creation of the beneficiary account did not deliver a quantity of money to the beneficiary because delivery requires "the giving or yielding [of] possession or control of something to another." *Id.* at 440. Thus, payment in a single sum required delivery of possession or control of a quantity of money to the beneficiary. This did not occur because Jackson Life did not give the beneficiary possession or control over a quantity of money. Instead, Jackson Life retained possession and control over the proceeds and gave the beneficiary

er [the insurer] acted as an ERISA fiduciary when, by establishing the [beneficiary accounts], it retained and invested death benefits presently due beneficiaries under [the insurer's] ERISA plan and not paid until drawn down as beneficiaries wrote checks on their [beneficiary accounts]." *Mogel,* 547 F.3d at 26.

To resolve this issue, the First Circuit needed to determine whether the insurer had paid the policy proceeds to the beneficiaries, because if the insurer had made payment any fiduciary duty would be extinguished. The First Circuit decided that placing the proceeds in the beneficiary accounts did not constitute payment to the beneficiaries. Accordingly, the proceeds remained in the insurer's control and its fiduciary obligations contin-

ued. *See id.* ("*[T]he* sums due plaintiffs remain plan assets subject to [the insurer's] fiduciary obligations until actual payment."). Thus, the statement at issue was not dicta, because it was integral to the First Circuit's finding that payment of the proceeds had not been made and that the insurer retained control over the funds, which in turn supported the conclusion that the insurer breached its fiduciary duty.

10. Payment and sum are not defined in the policy and "[u]nless otherwise defined in the insurance policy, terms in the policy are given their plain, ordinary, and popular meaning as supplied by dictionary." *State Farm Fire & Cas. Co. v. Bauman,* 313 Ga.App. 771, 723 S.E.2d 1, 3 (2012).

the ability to *request* delivery of a quantity of money by writing a draft on the account.

The beneficiary account did not, as Jackson Life contends, give the beneficiary sufficient possession of the proceeds to constitute delivery. Jackson Life argues that the beneficiary had effective possession of the proceeds in the beneficiary account because she could access the proceeds by simply writing a draft.[11] Moreover, according to Jackson Life, whether it *actually* delivered possession of the proceeds to the beneficiary is irrelevant to the issue of payment. If the proceeds were paid by check, Jackson Life asserts that payment would be complete when the check was delivered to the beneficiary, even though the insurer would retain possession of the funds until the beneficiary endorsed and cashed the check. Likewise, payment was complete here because, even if Jackson Life retained possession of the proceeds, the beneficiary could access them simply by writing and cashing a draft.

However, the plain language of the policy required Jackson Life to pay (i.e. deliver possession of) the proceeds to the beneficiary in a single sum (i.e. a quantity of money). The plain meaning of the term payment does not appear to encompass the delivery of *effective*, rather than actual, possession of the proceeds. If the delivery of effective possession was contemplated by the policy, the court would expect the policy to say so. Moreover, the effective possession of the proceeds bestowed by the beneficiary account did not give the beneficiary the same control over the proceeds she would have had if Jackson Life had instead delivered money or a check. The beneficiary's control over the funds in the beneficiary account was limited in several ways. For example, the beneficiary could only access the proceeds in increments greater than $250 because drafts on the account had to be written for at least $250, and the beneficiary could not assign the proceeds or use them as collateral. (May 17, 2006 Letter 3.) If actual possession of the proceeds had been delivered, the beneficiary could have used the proceeds without any minimum limit and could have freely assigned the proceeds or leveraged them as collateral.

Additionally, the contention that payment by check is similar to payment by beneficiary account is not convincing, since it fails to grasp the reason why payment by check discharges the obligation to pay. The contention is based on a false premise, namely that a check constitutes payment because it gives a beneficiary the *ability* to access funds, even though a check does not transfer possession of the funds until it is cashed. But, a check constitutes payment for a different reason. By operation of law, when "an uncertified check is taken for an obligation, the obligation is *suspended* to the same extent the obligation would be discharged if an amount of money equal to the amount of the instrument were taken." O.C.G.A. § 11–3–310(b) (emphasis added).[12] The obligation remains suspended until the check is either dishonored or paid. "Payment ... of the check results in discharge of the obligation to the extent of the amount of the check." *Id.* § 11–3–

---

**11.** Actual possession is "[p]hysical occupancy or control over property," while effective or constructive possession is "[c]ontrol or dominion over a property without actual possession or custody of it." Black's Law Dictionary, 1183 (7th ed. 1999). Constructive possession requires "[b]oth the power and the intention at a given time to exercise dominion or control over a thing...." *Farm*

*Credit of N.W. Fla. v. Easom Peanut Co.,* 312 Ga.App. 374, 718 S.E.2d 590, 599 (2011) (quotation marks omitted).

**12.** The word "instrument" means a "negotiable instrument." O.C.G.A. § 11–3–104(b); *see also id.* § 11–3–104(a) (defining "negotiable instrument").

310(b)(1). Therefore, a check is legally analogous to the delivery of "an amount of money equal to the amount of the instrument. . . ." *Id.* § 11–3–310(b).

Accordingly, if Jackson Life had sent plaintiff a check for the proceeds, that check would have suspended the obligation to deliver the proceeds as a quantity of money from the time that plaintiff received the check and would have completely discharged the obligation when it was cashed. The fact that Jackson Life would have retained actual possession of the proceeds until the check was cashed is legally irrelevant. Conversely, the beneficiary account and the associated "checkbook" did not similarly suspend or discharge the obligation to pay the proceeds because neither is a negotiable instrument. Although Jackson Life claims that the "checkbook" contains "checks," [13] the complaint alleges that these so-called "checks" are actually drafts. (Am. Compl. 11.) This allegation is not wholly conclusory and the complaint raises a plausible inference that the "checks" delivered by Jackson Life were not legally checks.

All checks are drafts, but not every draft is a check. A draft is an order to pay, O.C.G.A. § 11–3–104(e), "a written instruction to pay money signed by the person giving the instruction," *id.* § 11–3–104 cmt. 1.[14] A note, on the other hand, is a promise to pay, *id.* § 11–3–104(e), "a written undertaking to pay money signed by the person undertaking to pay," *id.* § 11–3–104 cmt. 1. A check is both a draft and a note, because it contains an order to pay and a promise to pay.

Since Jackson Life allegedly retains control of the proceeds in the beneficiary account, a draft written on that account would plausibly draw on funds held by Jackson Life, payable through a bank. This practice is common in the insurance industry. *See id.* § 11–3–103 cmt. 2 (noting that "[s]ome insurance companies also follow the practice of issuing drafts in which the drawer draws on itself and makes the draft payable at or through a bank."). Such an instrument is legally considered to be a draft, not a check. *Id.*; *see also id.* § 11–3–103 cmt. 4 ("[A] draft drawn on an insurance company payable through a bank is not a check because it is not drawn on a bank.").[15] The complaint does not allege that Jackson Life is a bank. Therefore, it raises a plausible inference that the "checks" in the beneficiary account "checkbook" are actually drafts.

And, even though a draft, like a check, is considered a negotiable instrument, it is

---

**13.** Notably, Jackson Life's claim form referred to drafts—not checks—that a beneficiary could write "to access [her] money" in the beneficiary account. (Am. Compl. 6.)

**14.** Section 11–3–104 is Georgia's codification of Uniform Commercial Code § 3–104. The comments to the U.C.C. provision are appended to Georgia's statute. "To determine the legislature's intent in enacting a provision of the U.C.C., [Georgia courts] consult the official comments accompanying the U.C.C." *Gerber & Gerber, P.C. v. Regions Bank*, 266 Ga.App. 8, 596 S.E.2d 174, 177 n. 1 (2004).

**15.** There are other differences between a draft and a check. Some of these may be material to this litigation. A draft, unlike a check, does not contain a promise to pay. The negotiability of a check cannot be limited, but the negotiability of a draft can be. *See* O.C.G.A. § 11–3–104(d). A check is usually paid faster than a draft, because "provisional credits are entered [by a bank] immediately for a check at all states of the collection process and [the check] automatically becomes final without further action upon payment by the drawee bank. . . ." *Calcasieu–Marine Nat'l Bank of Lake Charles v. Am. Employers' Ins. Co.*, 533 F.2d 290, 300 (5th Cir.1976). Drafts, on the other hand, are "handled as 'collection' items and dealt with individually, rather than in the bulk, and since no assumption is made that they will be honored, no credits, not even provisional credits, are given until the item has been paid by the buyer." *Id.*

plausible that the blank drafts in the "checkbook" were not negotiable instruments. When sent to the beneficiary, the blank drafts were not made out for a fixed amount of money. Instead, the beneficiary could write in the amount of the draft. (*See* May 17, 2006 Letter 3 (stating that the beneficiary can withdraw the full amount of the proceeds by "[s]imply writ[ing] a check for that amount.").) A negotiable instrument must contain a promise or order for a "fixed amount" of money. O.C.G.A. § 11–3–104 cmt. 1. Since the "checks" sent by Jackson Life were not made out for a fixed amount of money when sent, they were not negotiable instruments when they were initially delivered. Therefore, the mere creation of the beneficiary account and the sending of the "checkbook" did not deliver a negotiable instrument to the beneficiary and, hence, the obligation to pay the proceeds in a quantity of money was not discharged.[16]

The conclusion that the creation of the beneficiary account did not constitute payment of the proceeds aligns with the result in *Mogel*, but not all of its reasoning. *Mogel's* conclusion that the insurer had not paid the proceeds was premised on the insurer's continued possession of the proceeds. Jackson Life argues that under this possession standard, a check for the proceeds sent by the insurer would not constitute payment until the check was presented for payment, since the insurer would retain possession of the proceeds until the check was cashed. Therefore, payment via the creation of the beneficiary account was synonymous to payment by check.

Even if this contention undermines the reasoning in *Mogel*, however, it does not affect the court's decision. Although a check is not *actually* paid until presented for payment at a bank, the delivery of a check legally suspends the *obligation* to pay unless the check is presented and dishonored. The beneficiary account and the accompanying "checkbook" are different because they do not legally suspend this obligation.[17]

Jackson Life also cites several cases that have concluded that an insurer's creation of a beneficiary account, rather than payment by check, did not breach the insurer's obligation to pay the policy proceeds to the beneficiary. *See Rabin v. MONY Life Ins. Co.*, 387 Fed.Appx. 36 (2d Cir. 2010) (unpublished per curiam opinion) (dismissing plaintiff's breach of contract claim which asserted that the insurer breached the policy's terms by placing policy proceeds in a beneficiary account instead of delivering a check); *Phillips v. Prudential Ins. Co. of Am.*, No. 11–CV–0058–DRH, 2011 WL 5915148 (S.D.Ill. Nov. 28, 2011) (same); *Garcia v. Prudential Life Ins. Co. of Am.*, No. 08–5756–JAG, 2009 WL 5206016 (D.N.J. Dec. 29, 2009) (same). However, each of these cases is factually distinguishable. The policy in *Rabin*, unlike the policy here, expressly "authorize[d] [the insurer's] settlement of surrender proceeds by methods other than single lump-sum payments— including methods not detailed in the con-

---

**16.** For this reason, O.C.G.A. § 11–3–310(c), which provides that the delivery of any negotiable instrument suspends an obligation, is inapplicable.

**17.** The basis for this conclusion is Georgia law, which defines the effect of a negotiable instrument when it is taken in exchange for an obligation. *See* O.C.G.A. § 11–3–310. Al-

though this reliance on Georgia law seems to distinguish this case from *Mogel*, upon closer examination it does not. Georgia's law is a codification of Uniform Commercial Code § 3–310. *Mogel* arose in Massachusetts, and Massachusetts has also codified the same U.C.C. provision, with only immaterial differences. *See* Mass. Gen. Laws 106 § 3–310.

tract." 387 Fed.Appx. at 39; *see also id.* at 39 n. 1 (distinguishing *Mogel* because "the life insurance policy in *Mogel* explicitly called for a 'lump sum' payment whereas the contract here at issue explicitly authorizes [the insurer] to agree to non-lump-sum payments."). In *Phillips* and *Garcia*, the beneficiaries, unlike plaintiff in this case, failed to specifically request—as required by the policy's claim form—the payment of proceeds in a single sum. *Cf. Phillips*, 2011 WL 5915148, at *3 (claim form stated "that the method of delivery would default to the [beneficiary account] unless the beneficiary affirmatively chose another option," and the beneficiary executed the form "without designating that she wished to receive the proceeds in a single sum."); *Garcia*, 2009 WL 5206016, at *3 (claim form stated that unless the beneficiary elected otherwise "eligible death claim benefits will be paid by way of the [beneficiary account]" and the beneficiary "left blank the fields that allowed her to designate another settlement or payment option.").

Moreover, the court's conclusion draws strong support from Georgia's statutory interest requirement, which requires life insurers to pay a statutorily-designated interest rate on all life insurance proceeds from the date of the insured's death until the date the proceeds are paid to the beneficiary. O.C.G.A. § 33–25–10(b). Under that statute, payment only occurs when proceeds are "manually delivered by an agent or representative of the insuring company or deposited by the insuring company in the United States mail, postage prepaid, and directed to the resident at his last known address as evidenced by the business records of the insuring company." *Id.* § 33–25–10(d). This definition requires the insurer either to manually tender proceeds through an agent or to mail proceeds to the beneficiary. The creation of a beneficiary account did neither of these things. Accordingly, the conclusion that the complaint raises a plausible claim that the creation of the beneficiary account breached the policy's terms is inescapable.

Not to be dissuaded, Jackson Life contends that even if there was a technical breach of the contract's terms, two other principles require dismissal of the breach of contract claim. Jackson Life argues that the creation of the beneficiary account substantially complied with the requirement to pay the proceeds to the beneficiary in a single sum. Georgia law only requires "substantial" compliance with a contract's terms. *See* O.C.G.A. § 13–4–20 ("Performance, to be effectual ... must be substantially in compliance with the spirit and the letter of the contract and completed within a reasonable time."). Jackson Life contends that in *Rabin*, the Second Circuit found that the insurer's creation of a beneficiary account "was not sufficiently different from payment by check to permit a jury to find a material breach," because the beneficiary could "liquidate his proceeds at any time by writing himself a check for the full account balance...." 387 Fed.Appx. at 39. But, *Rabin* is not persuasive on this point, because it does not address the difference between a check and a draft or observe that a draft drawn on an insurance company cannot be a check.[18] Moreover, the policy in *Rabin*, as discussed previously, did not require payment in a single sum and the creation of

---

**18.** Although each of these conclusions is premised on the same Georgia statute, that statute simply codifies the Uniform Commercial Code and the comments thereto. *See* O.C.G.A. § 11–3–104 cmt. 4 (adopting U.C.C. § 3–104 and comments which note that "a draft drawn on an insurance company payable through a bank is not a check because it is not drawn on a bank."). *MONY* was decided under New York law, which codifies the same U.C.C. provision, albeit with minor differences. *See* N.Y.U.C.C. § 3–104(2)(b) (providing that a check is "a draft drawn on a bank and payable on demand"). Notably, the New York statute does not codify the comment that "a draft drawn on an insurance company is not a check." This omission is

the beneficiary account thus did not expressly violate the policy's terms.[19]

■ Perhaps most importantly, the question of substantial compliance is typically a question of fact, rather than of law. *See Atlas Casing Co. v. Joyner*, 192 Ga. App. 738, 386 S.E.2d 397, 399 (1989). Substantial compliance can be decided as a matter of law only where the facts permit only one reasonable conclusion. 23 Williston on Contracts § 63:3 (4th ed. 1990). The facts alleged in this case, particularly the difference between payment of the proceeds by money or check and payment of the proceeds by the creation of the beneficiary account, raise a plausible claim that Jackson Life did not substantially comply with the policy's terms.

■ Additionally, Jackson Life contends that plaintiff cannot sustain a breach of contract claim because Georgia law requires plaintiff to show damages resulting from the breach and plaintiff cannot do so. But, as plaintiff pointed out in her response brief, in *Brock v. King*, 279 Ga.App. 335, 629 S.E.2d 829 (2006), the court stated "the jury could have concluded that defendants had breached the contract" even if the defendant "had failed to prove actual damages." *Id.* at 836. Indeed, under Georgia law, "[i]n every case of breach of contract the injured party has a right to damages, but if there has been no actual damage, the injured party may recover nominal damages sufficient to cover the costs of bringing the action." O.C.G.A. § 13–6–6; *see also McEntyre v. Edwards*, 261 Ga.App. 843, 583 S.E.2d 889, 891 (2003) (holding that "[a] showing of actual damages was simply not required" to sustain breach of contract claim because "[a]t trial, the defendants sought *nominal* damages . . . ." (emphasis original)). In a footnote in its reply brief, Jackson Life conceded that "[t]here is authority to support [the] proposition" that nominal damages are recoverable even where a breach of contract caused no loss. (Def.'s Reply Br. 8 n. 1.) But, it contended that nominal damages are recoverable only where there was at least "*some* cognizable injury" and there was no cognizable injury whatsoever in this case. (*Id.* (emphasis original).)[20]

---

immaterial, however, because under the New York statute a check must be drawn on a *bank,* not an insurance company. There is no indication in the complaint that Jackson Life is a bank.

19. For this reason, the court takes issue with Jackson Life's claim that *Rabin* involved facts that were "indistinguishable" from this case. (Def.'s Br. in Supp. 8.) Indeed, the panel in *Rabin* explicitly *distinguished* the policy at issue in that case from the policy in *Mogel*. It was the policy in *Mogel*—not the policy in *Rabin*—that was indistinguishable from the policy in this case. Thus, Jackson Life's counsel mischaracterized *Rabin*.

In addition to filing a brief littered with typos, plaintiff's counsel also mischaracterized a Second Circuit decision. Page 9 of plaintiff's response brief included the following parenthetical statement after a citation of *Faber v. Metropolitan Life Insurance Co.,* 648 F.3d 98 (2d Cir.2011): "payment [sic] by RAA is not, in fact, the same thing as payment by lump sum." Since this is the only explanation plaintiff gives of *Faber,* her brief suggests that this statement is *Faber's* holding. But, this quoted passage is only part of a sentence. The full sentence states that: "Indeed, much of the First Circuit's opinion [in *Mogel* ] is devoted to establishing that payment by RAA is not, in fact, the same thing as payment by lump sum." 648 F.3d at 107. In context, it is clear that *Faber* is simply re-stating *Mogel's* holding and *Faber* never adopts that holding. This parenthetical statement was thus an entirely false characterization and very troubling.

20. This contention seems to be mere sophistry. Under Georgia law, "actual damages" are "those which show an 'actual and real loss or injury.'" *DeJong v. Stern,* 162 Ga. App. 529, 292 S.E.2d 115, 117 (1982). There does not seem to be a meaningful difference between a cognizable injury and a "real" injury.

As Jackson Life's concession acknowledges, the decisions cited by both parties appear to be in some tension, and neither party has adequately explained, at this stage, how to resolve that tension. The court is therefore unwilling to presently hold that Georgia law requires a plaintiff to show actual damages to sustain a breach of contract claim. Thus, the motion to dismiss is denied with respect to count one.

## V. Count Two: Breach of the Covenant of Good Faith and Fair Dealing

Jackson Life also sought dismissal of count two, which alleged a breach of the covenant of good faith and fair dealing. Such a claim cannot be maintained independently of a valid breach of contract claim. *See Stuart Enters. Int'l. v. Peykan, Inc.*, 252 Ga.App. 231, 555 S.E.2d 881, 884 (2001). Jackson Life contended that the complaint did not state a claim for breach of contract and that, accordingly, the covenant of good faith and fair dealing claim necessarily failed. But, as the preceding discussion demonstrates, the complaint *does* state a valid claim for breach of contract. Thus, the motion to dismiss is denied with respect to count two.

## VI. Count Three: Unjust Enrichment

Jackson Life argued that plaintiff's unjust enrichment claim in count three is barred by a four-year statute of limitations. *See* O.C.G.A. § 9–3–26 (requiring "[a]ll other actions upon contracts express or implied ... [to] be brought within four

years from the accrual of the right of action."). Jackson Life sent plaintiff a letter dated May 17, 2006, informing her of the creation of the beneficiary account. More than four years elapsed between this date and the filing of the complaint on December 20, 2011. For purposes of the statute of limitations, a claim accrues "on the date that suit on the claim can first be brought." *Hoffman v. Ins. Co. of N. Am.*, 241 Ga. 328, 245 S.E.2d 287, 288 (1978).

■ Plaintiff's unjust enrichment claim is based on Jackson Life's retention of the insurance proceeds. This retention began when Jackson Life created the beneficiary account instead of paying the proceeds to the beneficiary. Since the beneficiary account was created on May 17, 2006, and plaintiff learned of its creation via letter shortly thereafter, the unjust enrichment claim accrued more than four years prior to the filing of the complaint. Accordingly, it must be dismissed.[21]

## VII. Count Four: Payment of Statutory Interest

Georgia law requires every insurer that provides life insurance policies to pay interest to the beneficiary "on proceeds or payments under any individual policy of life insurance," O.C.G.A. § 33–25–10(a), "from the insured's death until the date of payment," *id.* § 33–25–10(b). The amount of interest paid depends on whether the beneficiary has filed "an action to recover the proceeds due under [a] policy ... [that] results in a judgment against the insurer." *Id.* § 33–25–10(b)(1). If so, interest is computed at the legal rate of

21. Plaintiff claims, without citation to any authority, that "as long as the [d]efendant's [sic] continued to use the [p]laintiff's proceeds, the violation continues," thereby tolling the statute of limitations. (Pl.'s Resp. Br. 14.) The unjust enrichment, however, stems from Jackson Life's *retention* of the policy proceeds. Jackson Life began retaining the policy proceeds as soon as it established the beneficiary account. Therefore, the claim accrued on that date. Additionally, the complaint's contention that the statute of limitations was tolled because of Jackson Life's concealment of material facts is simply a conclusory allegation.

interest. *Id.* If not, "interest shall be computed daily at the greater of the rate of 6 percent per annum or the highest interest rate currently paid by the insurer on proceeds left under an interest settlement option," and, after a claim is filed, at 12 percent "from 30 days after the date the claim is filed until the date of payment...." *Id.* § 33–25–10(b)(2).

Jackson Life paid statutory interest to plaintiff, but it computed this interest using the date that the beneficiary account was created as "the date of payment." Plaintiff contends that, since the creation of the beneficiary account did not constitute payment of the proceeds, she is entitled to additional statutory interest. Jackson Life argued that this claim should be dismissed, because "it paid plaintiff via the Beneficiary Access Account." (Def.'s Br. in Supp. 13.)

As previously discussed, Jackson Life's creation of the beneficiary account did not constitute payment of the proceeds to the beneficiary. Moreover, the Georgia interest statute provides that "payment shall be deemed to have been received by a [beneficiary] when manually delivered by an agent or representative of the insuring company or when deposited by the insuring company in the United States mail, postage prepaid, and directed to the [beneficiary] at his last known address...." O.C.G.A. § 33–25–10(d). The creation of the beneficiary account did not constitute either manual delivery of the proceeds or delivery of the proceeds via mail. Thus, the complaint raises a plausible claim that Jackson Life failed to comply with Georgia's interest statute. The request to dismiss this count is denied.

## VIII. Conclusion

For the foregoing reasons, defendant's "Motion to Dismiss" [4] is hereby **GRANTED** in part and **DENIED** in part. Defendant's motion is hereby **GRANTED** with respect to the unjust enrichment claim asserted in count three of the complaint. Defendant's motion is hereby **DENIED** in all other respects.